**STATE of Delaware**

v.

**Dale S. MILLER, Laurie Gray
Leo Milner.**

Superior Court of Delaware,
New Castle County.

Argued July 10, 1980.

Decided Aug. 15, 1980.

Joseph Patrick Hurley, Jr., Wilmington, for the State.

L. Vincent Ramunno, Wilmington, for defendants, Miller and Milner.

Edward C. Pankowski, Jr., Wilmington, for defendant Gray.

BALICK, Judge.

The defendants are jointly charged in an eight count indictment with drug, weapon, and traffic offenses. They have moved to suppress evidence of items seized from the

glove compartment of a motor vehicle operated by Miller and occupied by Gray, from the person of Gray, and from the dwelling of Miller and Milner.

The background of these seizures is as follows: The police had the dwelling, which they suspected to be the scene of drug distribution, under surveillance. They observed Miller, who was carrying a light plastic bag, and Gray leave the dwelling and drive off in the vehicle. A patrolman was instructed to follow them for the purpose of identifying the vehicle and its occupants. When they made an improper right turn on a red arrow, the patrolman informed the officers in charge of the drug surveillance and was instructed to stop the vehicle. On doing so, it was discovered that Miller's driver's license was suspended and Gray was in no condition to drive. In the meantime, officers involved in the drug surveillance had arrived at the vehicle. The light plastic bag that they had seen Miller · carrying was not in view. It was determined that the car should be impounded and its contents inventoried. The officers took the keys from the ignition and unlocked the glove compartment, finding the light plastic bag containing alleged drugs inside. Miller and Gray were then arrested for possession of drugs. A thorough search of Gray at the police station led to the discovery of other alleged drugs on her person. She also made statements that the State seeks to use in evidence against her at trial. Based in part on the items seized from the vehicle and from Gray, the officers obtained a nighttime search warrant for the dwelling of Miller and Milner. They seized more alleged drugs, drug paraphernalia, and a weapon in the dwelling.

The defendants contend that the original traffic arrest was a pretext to search for drugs, that the decision to impound the vehicle and inventory its contents was a pretext to search for the light plastic bag, that it was unreasonable to search the locked glove compartment, and that the nighttime search warrant for the dwelling is invalid because the supporting affidavit does not show necessity for a nighttime search. Gray has also moved to suppress statements made by her at the police station.

The position of the State is not that there was probable cause to search the glove compartment, but rather that there was a lawful arrest for traffic offenses, a good faith decision to impound the vehicle, and that it was reasonable standard procedure to search the locked glove compartment in the course of the inventory of the contents of the vehicle.

The issue presented is whether the police may search a locked glove compartment as standard procedure in the course of an inventory search of an impounded motor vehicle. The controlling cases on the scope of an inventory search are *State v. Gwinn*, Del.Supr., 301 A.2d 291 (1972) and *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Other decisions are cited in Annotation, Lawfulness of "Inventory Search" of Motor Vehicle Impounded by Police, 48 A.L.R.3d 537 (1973), esp. § 13. *Gwinn* holds that police officers may not search luggage found in the locked trunk of a vehicle. *Opperman* holds that they may search an unlocked glove compartment in a locked vehicle. The State argues that it follows that they may search a locked glove compartment. While this inference arguably follows from the bare holdings of the two cases, I conclude that it is not consistent with the reasoning underlying the holdings.

■ Warrantless inventory searches are justified by the interest in permitting the police to safeguard the contents of vehicles that are in the custody of the State. A vehicle is not only itself a container for persons and things, including luggage and other containers, but usually it also has a glove compartment and trunk designed to carry things, including containers. Whether a search is reasonable in scope depends on the facts of the particular case, such as the reason for the impoundment, the condition of the vehicle, the availability of the owner, and so forth. Turning to the facts of this case, the vehicle was impounded while the defendant was being taken before

a justice of the peace on a charge of driving while his license was suspended. Ownership of the vehicle and the whereabouts of the owner were known. The only reason offered for searching the glove compartment is standard procedure.

*Opperman* permitted the police to search an unlocked glove compartment. The holding has been criticized in Whitebread, Constitutional Criminal Procedure (Am.Acad. Jud.Ed.1978) p. 132, as follows:

"The *Opperman* decision can be criticized on two grounds. First, citing *Carroll* as support for holding that the defendant's automobile was not entitled to full Fourth Amendment protection was inapposite in this case. No exigent circumstances were present at either the time of impoundment or the search. Nor was there probable cause to believe the car contained contraband.

Secondly, assuming the intrusion into the car can be justified purely on the lowered expection (sic) of privacy grounds propounded in *Cady*, it is still not clear why the Court permitted the intrusion into the car's glove compartment. This area is not within plain view nor is it exposed to public scrutiny. Justice Powell's concurrence attempted to justify the glove compartment search as a means of protecting the car owner's property from vandals while the car is in the impound lot. Yet a car is in much greater danger of being vandalized on the open streets, where the police clearly have no right to conduct an inventory search. As *Opperman* itself holds, the search must be preceded by a lawful impoundment. Moreover, vandals are less likely to invade locked glove compartments (or trunks) than other parts of the car. *Opperman* appears to stretch the plain view doctrine a notch too far in allowing police to make inventory searches of unexposed areas inside the car."

On remand from the United States Supreme Court, the Supreme Court of South Dakota held that the search of the unlocked glove compartment in *Opperman* was unreasonable under the state constitution. *State v. Opperman*, S.D.Supr., 247 N.W.2d 673 (1976). See also *Mozzetti v. Superior Court of Sacramento County*, Cal.Supr., In Bank, 94 Cal.Rptr. 412, 484 P.2d 84 (1971), which was cited with approval in *Gwinn*.

*Opperman* may be distinguished on its facts from the present case. In *Opperman* the court seems to place significance on the fact that the glove compartment was unlocked, noting that "vandals would have had ready and unobstructed access [to it] once inside the car." See footnote 10. In his concurring opinion, Justice Powell notes, at footnote 6, that the South Dakota police officers did not search the locked trunk but simply noted on the inventory form that it was locked. Not only does the fact that the glove compartment was unlocked bear on the degree of risk to its contents. It also bears on the degree to which there was a diminished expectation of privacy, which is one of the rationales for a less strict adherence to the warrant requirement for motor vehicles.

Other possible grounds for distinguishing *Opperman* are that there were valuables in plain view and the owner was not present to make other arrangements for safekeeping his belongings when the vehicle was impounded for illegal parking in the early morning hours. The vehicle might have been stolen and abandoned. Under these circumstances, it was held reasonable to search the unlocked glove compartment, where the vehicle registration or other identification is customarily kept.

Nor should *Gwinn* be considered precedent permitting search of a locked glove compartment as standard procedure. *Gwinn* was decided before *Opperman*. The focus of the court was on the right to search luggage in the trunk, not on the right to search the trunk, and it was only on reargument that the court mentioned in passing that the trunk was locked. On the other hand, the court reasoned that the scope of inventory searches should not be enlarged on the basis of conjectural risks to property in the vehicle.

Recognizing the possibility of abuse, the courts have required the State to

show that an inventory search was conducted in good faith furtherance of the police caretaking function and not as a pretext for an investigatory motive. As a further guard against abuse, the intrusion should be minimized by limiting the scope of an inventory search to protection against substantial risks to property in the vehicle and not enlarging the scope on the basis of remote risks. The police should not be permitted to search glove compartments, trunks, or other containers within the vehicle, unless there is some particular reason for doing so. It is consistent with the holding of *Opperman* and the reasoning of the court in *Gwinn* to hold that it was unreasonable under the Fourth and Fourteenth Amendments of the United States Constitution to search the locked glove compartment of the vehicle in the present case. I will thus grant the defendants' motion to suppress evidence of the contents of the plastic bag seized from the locked glove compartment.

Since the arrest and search of Gray and the search of the dwelling were based on the evidence seized from the locked glove compartment, it follows that the items seized from the person of Gray and the dwelling must also be suppressed. I would note that the items seized from the dwelling would have to be suppressed on other grounds anyway, since the affidavit for the search warrant does not show the necessity for a nighttime search, as required by 11 *Del.C.* § 2308. *Henry v. State*, Del.Supr., 373 A.2d 575 (1977). Having found that the inventory search was unreasonable in scope, it is unnecessary to consider the defendants' other contentions.