STATE OF NORTH CAROLINA v. NEAL EDWARD HALL

No. 8018SC802

(Filed 16 June 1981)

1. Narcotics § 6— forfeiture of vehicle—time of seizure
    Defendant's vehicle was properly seized pursuant to G.S. 90-112 where officers observed defendant use his car to conceal, convey, or transport a one pound paper sack of marijuana, and the seizure of the vehicle was not rendered invalid because it was not accomplished until four weeks after the commission of the unlawful acts which made the vehicle subject to forfeiture, since G.S. 90-112(f) does not restrict the time within which a vehicle may be seized after a violation of the controlled substances law has been observed.

2. Searches and Seizures § 11— inventory of contents of impounded vehicle—opening of closed container improper
    A search by police officers of a closed medicine bottle found in defendant's car exceeded the permissible scope of a valid inventory search of a lawfully impounded vehicle where the same officers who observed the illegal drug sale on 12 March 1979 arrested defendant and seized his vehicle on 9 April 1979; defendant, accompanied by one of the officers, drove the car to the basement of the sheriff's department where it could have been locked and secured; once it was parked and locked, those same officers apparently rushed defendant upstairs to an interview room and then returned almost immediately, within three minutes, to inventory the automobile's contents; in the course of that inventory, they opened an opaque brown plastic bottle, listed its contents, and then sent the pills found therein to the lab for chemical analysis; and the of-

ficers were thus using the inventory procedure as a pretext concealing an investigatory police motive, rather than performing the mere ministerial act of an inventory designed to protect the legitimate interests of both defendant and the police against the possible event of a theft.

APPEAL by defendant from *Kivett, Judge.* Judgment entered 3 April 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 27 January 1981.

Defendant was convicted of felonious possession of LSD. The court imposed a three-year split sentence, ordering defendant to serve four months in the county jail and placing him on probation, upon certain conditions, for five years.

The facts of this case are briefly summarized as follows. Defendant was present at the Carolina Circle Mall on 12 March 1979, when Gary Jackson sold one pound of marihuana to Officer S. E. Nelson, a vice and narcotics detective of the Guilford County Sheriff's Department. Another detective, G. T. Johnson, who observed the entire transaction from a short distance away, had seen defendant open the door to his Ford station wagon and reach behind the driver's seat to pick up a large paper sack which he handed to Jackson. Jackson then delivered this sack to Officer Nelson who paid $355.00 for it. The contents of the sack were subsequently analyzed and determined to be marihuana.

After the consummation of this drug sale, Officer Johnson maintained a surveillance of defendant and his vehicle at 1323 Winstead Place between 12 March and 9 April 1979. Officer Johnson then appeared before the district court on 9 April 1979 to procure a warrant of seizure for defendant's vehicle pursuant to G.S. 90-112. Judge Hatfield granted the State's motion and entered the following ex parte order:

"[I]t appearing to the Court that Neal Edward Hall is charged with feloniously possessing and delivering the controlled substance Marihuana on March 12, 1979, and that Neal Edward Hall used a 1970 Ford license number REF-305, registration number ON74Y138330 to facilitate the transportation for delivery and possession of the Marihuana, and that NC GS 90-112(b) authorized the seizure of the automobile.

It is therefore ordered, adjudged and decreed that the 1970 Ford License number REF-305 Registration #ON74Y138-

330 be seized by the Guilford County Sheriffs Department and held in accordance with law until further orders of the Court."

Officers Johnson and Nelson went to defendant's residence later that same day and served the order of seizure for the vehicle and arrested defendant, pursuant to duly issued warrants, for felonious possession with intent to sell and deliver marihuana and delivery of marihuana on 12 March 1979. Defendant, accompanied by Officer Nelson, drove his car to the Sheriff's Department and parked it in the basement. The vehicle was locked, and defendant was escorted to an interview room in the building. Officers Johnson and Nelson, together with Officer Barnes, then returned to the car within three minutes (from the time it had been parked), unlocked it and began an inventory of its contents in accordance with standard departmental policy. In the course of that inventory, the officers discovered an open cigar box, without a lid, on the front seat of the car which contained a varied assortment of items, including some raffle tickets and a small brown plastic medicine bottle. The officers opened the medicine bottle and found 22 purple tablets which were subsequently determined to be LSD pills. The officers filed the following inventory form of the vehicle's contents after the search:

"(1) 1970 Ford license number REF-305, VIN ON74Y138330

(2) Brown plastic bottle contained 22 purple tablets, 2 blue tablets, 1 yellow tablet

(3) One motorcycle fender, blue in color

(4) One set Fat bob tanks for Harley Davidson motorcycle, black in color

(5) One ice scraper

(6) One umbrella

(7) One yellow waste basket

(8) One bottle Prell Shampoo

(9) One bottle Wella Balsam Conditioner

(10) One box of Heavy Duty shop towels

(11) Four (4) empty white cardboard boxes

(12) One Notebook Composition book

(13) One Pack Eckerd playing cards

(14) One pair Arrow sports glasses

(15) One brown Citadel Notebook

(16) One box of assorted yellow Freedom Sportsman Club raffle tickets

(17) One silver case knife

(18) One First aid kit

(19) One bundle paper sacks

(20) One box of sacks and plastic ties

(21) One air cool cushion

(22) One inspection certificate in the name of Neil Edward Hall 1323 Winstead Place, Greensboro, N.C. on a 1970 Ford VIN ON74Y138330

(23) One receipt in the name of Neal Hall dated 3-18-79"

On 4 June 1979, defendant was charged in four bills of indictment with possession with intent to sell and deliver marihuana and delivery of marihuana on 12 March 1979 and possession with intent to sell and deliver LSD and possession of valium on 9 April 1979. Defendant entered pleas of not guilty to all of these charges. When the cases were called for trial on 13 August 1979, defendant moved to suppress the evidence supporting the LSD and valium charges. The State, with defendant's consent, elected to proceed with defendant's trial on the marihuana charges pending the outcome of the court's ruling concerning the evidence in the other two cases. The jury found defendant not guilty of the marihuana offenses. Judge Kirby subsequently denied defendant's motion to suppress on 30 December 1979. In the meantime, defendant had also moved to dismiss the charges for lack of a speedy trial on 22 October 1979. Judge Wood later denied this motion on 23 January 1980, whereupon defendant was tried for possession with intent to sell and deliver LSD. That trial resulted in a mistrial because the jury was unable to reach a verdict. At defendant's retrial on 1 April 1980, however, the jury found defendant guilty of felonious possession of LSD.

---

---

*Attorney General Edmisten, by Special Deputy Attorney General Charles J. Murray, and Associate Attorney John F. Maddrey, for the State.*

*John F. Comer, for defendant appellant.*

VAUGHN, Judge.

The dispositive issue brought forward by defendant in this appeal is whether the trial court erred in denying defendant's motion to suppress the evidence of the LSD tablets at trial. In this respect, defendant believes his conviction must be reversed on either of the following two theories: (1) that his vehicle was improperly seized on 9 April 1979, thereby rendering any subsequent search of its contents invalid and unreasonable or (2) that the officers' search of a closed medicine bottle exceeded the permissible scope of a valid inventory search of a lawfully impounded vehicle. We reject defendant's first theory for reversal; nevertheless, we accept his secondary position and reverse his conviction on that ground.

[1] In the first instance, we believe defendant's vehicle was duly seized in the precise manner authorized by G.S. 90-112. The vehicle was unquestionably "subject to forfeiture" on the basis of Officer Johnson's observations, at the Carolina Circle Mall on 12 March 1979, that defendant had used his car "to unlawfully conceal, convey, or transport" a controlled substance, the one pound paper sack of marihuana. G.S. 90-112(a)(4). Defendant, nevertheless, argues that the subsequent seizure was invalid because it was not accomplished until four weeks after the commission of the unlawful acts which made the vehicle subject to forfeiture. We disagree.

To support the foregoing contention, defendant relies on G.S. 90-112(f) which provides that "[a]ll conveyances subject to forfeiture under the provisions of this Article shall be *forfeited* as in the case of conveyances used to conceal, convey, or transport intoxicating beverages." (emphasis added). In this respect, we note that G.S. 18A-21 does seem to require the contemporaneous seizure of a vehicle used to transport illegal intoxicants whenever the officer catches a person "in the act" of such unlawful transportation. *See State v. Vanhoy,* 230 N.C. 162, 165, 52 S.E. 2d 278, 280 (1949). We are not, however, persuaded that G.S. 90-112(f)

State v. Hall

imposes a similar requirement of contemporaneity for the seizure of vehicles subject to forfeiture under G.S. 90-112(a)(4) for two reasons.

First, G.S. 90-112(f), by its express terms, addresses the forfeiture process and does not refer to the initial act of seizure. The statute merely mandates that the actual forfeiture proceeding, instituted for a violation of the controlled substance law, be conducted in a manner consistent with the procedures employed in similar forfeiture actions concerning illegal intoxicants, whereby legal title to the property is removed from its owner and becomes vested in the State. We, therefore, conclude that G.S. 90-112(f) does not restrict the time within which a vehicle may be *seized* after a violation of the controlled substances law has been observed. Second, and more particularly, G.S. 90-112 includes a specific provision outlining the precise method by which vehicles are to be seized. G.S. 90-112(b) states that "[a]ny property subject to forfeiture under this Article may be seized by any law-enforcement officer upon process issued by any district or superior court having jurisdiction over the property. . . ." The plain effect of subsection (b) is to circumscribe the authority of law enforcement officers to seize vehicles unless they first obtain "process" from a neutral judicial officer. There is, however, no requirement in G.S. 90-112 that the officers must apply for an order of seizure immediately after they have observed the proscribed criminal activity.[1]

In the instant case, Judge Hatfield duly entered an order of seizure, under the express authority of G.S. 90-112(b), because "it

---

1. To fix a definite time within which officers must act to seize a vehicle after they have seen an illegal drug transaction might seriously hinder the effectiveness of large scale undercover drug investigations in which the officers are trying to find the big drug dealers through various smaller operators. If a vehicle must be seized immediately, or very soon after the commission of a crime, it is likely that the detective's cover would be destroyed, resulting in increased danger to that officer if he continues to work in the investigation or, if he must then drop out of the operation, the waste of his special efforts, requiring much training and planning, whereby he was enabled to make effective contact with those involved in illegal drug trafficking. Thus, though a situation may arise where the length of time, elapsing between the commission of a crime and the later issuance of an order of seizure, is too unreasonable to be sustained, it suffices to say that we are not confronted with such a case here because the process was served within a month after the officer saw the violation occur. *See also State v. Salem,* 50 N.C. App. 419, 274 S.E. 2d 501, 506 (1981), (discussing the legitimacy of pre-indictment delay caused by the State's efforts to protect "an ongoing undercover operation from exposure").

appear[ed]" from Officer Johnson's application therefor that defendant had used his car to transport marihuana. We thus hold that defendant's vehicle was properly seized pursuant to legal process and that such seizure authorized a subsequent routine inventory search of the vehicle to safeguard its contents. This being so, the only question that remains is whether the officers, during their inventory of the car, had the authority to open a closed, opaque[2] container and seize its contents without a warrant.

We note at the outset that a critical premise of the Fourth Amendment is that a governmental search of private property or effects without prior judicial approval is *per se* unreasonable unless the search fits into a well-delineated exception to the warrant requirement and is conducted under circumstances that are, in fact, exigent. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967). Thus, whenever the State has engaged in any kind of a warrantless search, it must demonstrate, with particularity, how the intrusion was exempted from the general constitutional demand for a warrant before evidence of the fruits of such a search may be admitted in a criminal prosecution. *See Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed. 2d 235 (1979); *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). It necessarily follows then, that when a vehicular search is based upon the inventory search exception, rather than probable cause, the State bears an especially heavy burden to show that the inventory procedure was authorized by a lawful seizure of the car, performed in a reasonable manner and not used as a pretext to bypass the rigorous demands of the Fourth Amendment. *See South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 2d 1000 (1976); *see, e.g., State v. Phifer,* 297 N.C. 216, 254 S.E. 2d 586 (1979); *State v. Vernon,* 45 N.C. App. 486, 263 S.E. 2d 340 (1980). The State cannot fulfill this burden in the instant case.

___

2. The State conceded, on oral argument, that the contents of the bottle were not plainly visible without opening the bottle itself. We have, therefore, disregarded that portion of the State's brief, inconsistent with its oral concession, which attempts to justify the admission of the evidence under the "plain view" exception to the warrant requirement by arguing that the officers had a right "to seize what appeared to be contraband lying in plain view." *See also State v. Francum,* 39 N.C. App. 429, 250 S.E. 2d 705 (1979) (holding, in part, that the contents of a paper bag in a wrecked car were not within an officer's plain view and that his inspection of its contents at the scene of an accident constituted a search).

[2]　Here, the *same* officers who observed the illegal drug sale on 12 March 1979 arrested defendant and seized his vehicle on 9 April 1979. Defendant, accompanied by Officer Nelson, drove the car to the basement of the Sheriff's Department where it could have been locked and secured. Once it was parked, and locked, those same officers apparently rushed defendant upstairs to an interview room and then returned almost immediately (within three minutes) to inventory the automobile's contents. In the course of that inventory, they opened the brown plastic bottle, listed its contents, "22 purple tablets, 2 blue tablets, 1 yellow tablet", and then sent the pills to the lab for chemical analysis. The officers did not, however, exercise the same diligence with respect to counting the number of "assorted" raffle tickets also located in the open cigar box. Such action certainly would have been more consistent with the State's contention that a search of the bottle was necessary to protect the police department against claims of theft. In these circumstances, we conclude that the officers were using the procedure as a "pretext concealing an investigatory police motive," rather than performing the mere ministerial act of an inventory designed to protect the legitimate interests of both defendant and the police against the possible event of a theft. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 2d 1000 (1976). A warrantless inventory is authorized under the Fourth Amendment only because it is "premised upon its being a benign, neutral, administrative procedure designed primarily to safeguard the contents of lawfully impounded automobiles." *State v. Phifer*, 297 N.C. 216, 220, 254 S.E. 2d 586, 588 (1979).

Clearly, the caretaking function of an inventory would have been properly fulfilled in this case by simply listing on the inventory sheet "one, brown plastic bottle." *See State v. Daniel*, 589 P. 2d 408 (Alaska 1979). Thus, we agree with defendant that this inventory search was unreasonable in its scope and are compelled to hold that, though the officers were authorized to inventory the vehicle's contents, they were not further empowered, without first obtaining a warrant, to go beyond the mere surveying and accounting of items, in terms of whole units, and search a closed container, whose contents were not in plain view, ostensibly for the sake of safeguarding its contents. *See generally*, Annot., "Lawfulness of 'Inventory Search' of Motor Vehicle Impounded by Police," 48 A.L.R. 3d 537, 546 (1973). Moreover, even if probable

cause had existed to believe that the bottle contained contraband, there were no exigent circumstances which made it impractical for the officers to obtain a warrant. *See State v. Vernon*, 45 N.C. App. 486, 263 S.E. 2d 340 (1980); *State v. Gauldin*, 44 N.C. App. 19, 259 S.E. 2d 779 (1979), *review denied*, 299 N.C. 333, 265 S.E. 2d 399 (1980).

We would further comment that, though the State did not cite nor rely upon it in its brief, the United States Supreme Court decision in *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed. 2d 730 (1967), does not command a different result. In *Cooper*, the Court specifically upheld the warrantless search of a vehicle seized in connection with a violation of the state narcotics law, to be used "as evidence in a forfeiture proceeding," for the police department's own protection. *Cooper* does not, however, stand for the proposition that law enforcement officials have a "blank check" under the Fourth Amendment to conduct warrantless searches of cars lawfully impounded under forfeiture statutes for drug violations, without any limitation as to their scope and purpose. Rather, the Court merely sustained the particular search in *Cooper* as being a reasonable inventory, under the circumstances, even though it was "conducted in a distinctly criminal setting." *South Dakota v. Opperman*, 428 U.S. 364, 373, 96 S.Ct. 3092, 3099, 49 L.Ed. 2d 1000, 1007-08 (1976). *Compare United States v. Chadwick*, n. 5, 433 U.S. 1, 10, 97 S.Ct. 2476, 2482-83, 53 L.Ed. 2d 538, 547 (1977) (referring to the "noncriminal" nature of inventory searches). Moreover, the Court recognized in *Cooper* that the reasonableness of *each* search and seizure must be decided on a case-by-case basis. 386 U.S. at 59, 87 S.Ct. at 790, 17 L.Ed. 2d at 732. We, therefore, believe that it is entirely consistent with *Cooper* for us to conclude, after an analysis of the peculiar facts before us, that the police intrusion into the closed, opaque, plastic bottle exceeded the permissible scope of an inventory search.

Our holding is also consistent with the logic of the United States Supreme Court in analogous cases involving warrantless searches of luggage containers, wherein the Court has emphasized that once an item is under the exclusive control of the police, exigent circumstances no longer exist, and a warrant must first be obtained before a search of its contents will be deemed reasonable. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed. 2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97

S.Ct. 2476, 53 L.Ed. 2d 538 (1977). Moreover, several other state courts have specifically held that a police search of a closed container, during an inventory of a seized vehicle, is unreasonable under the Fourth Amendment. *See State v. Miller*, 420 A. 2d 181 (Del. Super. 1980) (search of a locked glove compartment); *State v. Daniel*, 589 P. 2d 408 (Alaska 1979) (briefcase); *People v. Grana*, 185 Colo. 126, 527 P. 2d 543 (1974) (search of a zippered compartment within a closed flight bag found in the trunk); *State v. Keller*, 265 Or. 622, 510 P. 2d 568 (1973) (closed fishing tackle box); *Mozzetti v. Superior Court*, 4 Cal. 3d 699, 484 P. 2d 84 (1971) (unlocked suitcase). *See also United States v. Ross*, 49 U.S.L.W. 2702-03 (D.C. Cir. 1981), where the Court stated that *Arkansas v. Sanders, supra*, did not establish a "worthy container" rule protecting some kinds of containers but not others, and thus held that a closed, but unsealed, paper bag was "cloaked" by the protection of the Fourth Amendment; *State v. Goff*, 272 S.E. 2d 457 (W. Va. 1980), where the Court noted that the police only have the right to secure an impounded vehicle, by rolling up the windows and locking the doors, and that an inventory search is unreasonable unless items of personal property are first sighted in the car; *State v. Downes*, 285 Or. 369, 591 P. 2d 1352 (1979), holding that the officers illegally searched a cosmetic bag, found inside a closed, unlocked trunk, without a warrant, even though they properly stopped, searched and seized defendant's car.

In addition, the result we reach in the instant case reflects the sound public policy that an exception should not be allowed to swallow up the general rule, especially where constitutional protections are involved. To prevent inventories from becoming a convenient method to bypass the preference of the Fourth Amendment for a warrant and thereby permit officers to search freely for evidence in impounded vehicles, the reasonableness of each inventory search must be strictly construed. For, we are persuaded that just as "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears," *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971), the word "inventory" does not provide officers with sweeping authority to conduct extensive and overzealous searches of seized vehicles without a warrant, particularly where sealed containers are involved. *See* Wilson, *The Warrantless Automobile Search: Exception Without Justification*, 32

Hastings L.J. 127, 147-52 (1980). *See also State v. Phifer*, 297 N.C. 216, 220, 254 S.E. 2d 586, 588 (1979), where our Supreme Court noted that "[s]ince an inventory search may be undertaken without a warrant or probable cause, it is potentially subject to abuse by police officers intent upon ferreting out evidence of criminal activity."

In sum, we hold: (1) defendant's vehicle was properly seized pursuant to G.S. 90-112; (2) this lawful seizure permitted the officers to perform a standard inventory of the vehicle's contents; (3) the authority of the officers to conduct this inventory did not, however, include the right to search a small, closed bottle and seize its contents, which were not in plain view, absent a warrant duly issued by a neutral magistrate upon probable cause shown.

Our decision renders moot the questions raised by defendant with reference to the denial of a speedy trial and the judge's delay in ruling on his motion to suppress.

The order denying defendant's motion to suppress is reversed, and the judgment, based on the admission of that evidence, is arrested.

Judgment arrested.

Chief Judge MORRIS and Judge BECTON concur.