466 A.2d 895

**Kenneth Wayne JONES**

v.

**STATE of Maryland.**

**No. 1909, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Oct. 17, 1983.

102

Clarence W. Sharp, Assigned Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on brief, for appellant.

Bernard A. Penner, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Maryland, John Scarborough, State's Atty., for Cecil County, James C. McKinney and V. Michael Whelan, Asst. State's Attys., for Cecil County on brief, for appellee.

Argued before WILNER, GARRITY and ALPERT, JJ.

ALPERT, Judge.

Appellant, Kenneth Wayne Jones, was convicted of various violations of the controlled dangerous substances laws in three separate jury trials in the Circuit Court for Cecil County. In Criminal Case 6182 he was convicted of possession with intent to distribute cocaine, for which he received a 20-year sentence, and possession of marijuana, for which he received a one-year consecutive sentence.

Having been convicted of distribution of cocaine in Criminal Case No. 6028, he received a sentence of 20 years to run concurrent with the sentence in No. 6182. In Criminal Case No. 6094 he was convicted of maintaining a common nuisance (automobile) and received a sentence of 5 years consecutive to the sentences in Criminal Nos. 6182 and 6028. Feeling aggrieved at the prospect of serving 26 years imprisonment, he has appealed and contends that:

I. The trial court erred in denying the Motion to compel production or disclosure of the whereabouts of the informer, Clyde Costello Wilson, in No. 6028.

II. The trial court erred in denying the Motion to suppress evidence seized in a search of the Cadillac in No. 6094.

III. The evidence was not sufficient to sustain the conviction of common nuisance of the vehicle in No. 6094.

IV. The trial court erred in denying the Motion to suppress the statements allegedly made by Appellant and the evidence seized at the scene of the arrest in No. 6182.

V. The evidence presented was not sufficient to sustain the conviction of possession with intent to distribute cocaine in No. 6182.

VI. Appellant was not properly sentenced in Nos. 6028 and 6182.

Perceiving no reversible error in case No. 6182, we affirm. We shall reverse in case numbers 6028 and 6094 for the reasons stated in Part I *infra.* However, we shall address certain issues raised in those cases for the guidance of the trial judge at the new trial.

## FACTS

Trooper Roland Rose, a criminal investigator for the Maryland State Police, had been working undercover for the purpose of investigating illicit drug traffic in Cecil County in the summer and early fall of 1981. Approximately a week before June 5, 1981, appellant had been brought to his attention and on two or three occasions Rose had observed him operating a silver Cadillac Coupe de Ville with Delaware tags. According to Trooper Rose, on June 5, 1981 he met with appellant inside a residence on Booth Street in Elkton and asked him if he had any "girl" (the street name for cocaine). Present at that time was one Clyde Costello Wilson, referred to by appellant as the state's informant. In response, the appellant walked out of the residence to the

Cadillac and came back with a zip-lock glassine bag containing 2 tinfoil packets and a glassine bag containing 5 grams of marijuana. Trooper Rose paid $100 for the packet of cocaine. Rose again observed the appellant in the Cadillac on June 9, 1981. On June 18 they met again on Booth Street to discuss an opium deal. After transacting the sale of the alleged opium for the sum of $100, appellant left and said he was on his way to Aberdeen to dispose of the cocaine. He was observed outside of the Booth Street residence, getting into the Cadillac. Surveillance was maintained all the way to Route 40 past the North East Barracks, which was in the general direction of Aberdeen. Rose observed appellant operating the Cadillac in the Booth Street vicinity a number of times between June 18 and August 27, 1981. Sometime during the last week of August, appellant was seen driving a small blue car near Booth Street. On September 7, 1981, Trooper Rose discovered the Cadillac parked in the area of 500 Booth Street.

Concluding that he had enough information to seize the car under the forfeiture laws [1], Rose had the Cadillac towed to the State Police Barracks. A search of the Cadillac disclosed a syringe and needle, two empty foil wrappers, cigarette papers, glassine envelopes in the glove compartment, partially burned marijuana roaches in the ashtray, and a paper with a list of names and numbers.

I. *Disclosure Of Whereabouts Of The Informant*

At a preliminary hearing prior to Criminal Case No. 6028, appellant sought by motion to compel the State to produce the informant, Clyde C. Wilson, as a witness or to supply his address so that a subpoena could be issued to compel his testimony. Wilson was present when appellant sold cocaine to Trooper Rose on June 5, 1981 and had also been charged with distribution of controlled dangerous substances. However, these arrest warrants were never acted upon and were admittedly for the purpose of protecting Wilson by making

---

1. Art. 27, Sec. 297 Maryland Code.

it appear that he was a co-defendant with appellant. Appellant proffered that the State had provided Wilson protection and knew his present whereabouts. The State countered that Rose had testified that he did not know the informant's whereabouts, but that he believed he could locate Wilson through inquiries to other law enforcement officers. The motion was denied. Appellant renewed the motion at the beginning of the trial and this motion was also denied.

Appellant submits that he was entitled to disclosure of Wilson's address under our ruling in *Hardiman v. State,* 50 Md.App. 98, 436 A.2d 923 (1981), because this information was necessary and relevant to the preparation of his defense. Before addressing this contention, we review the State's (government's) privilege to withhold information concerning its informants and the role of the trial judge when confronted with a motion for a disclosure of an informant's identity or whereabouts.

The State is privileged to withhold disclosure of an informant's identity to further and protect the public's interest in effective law enforcement. However, disclosure must be made where the informant's knowledge and communications are relevant and useful to the defendant, or necessary to a fair adjudgment of the case. *Roviaro v. United States,* 353 U.S. 53, 59–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957). *See also Nutter v. State,* 8 Md.App. 635, 636, 262 A.2d 80 (1970). The burden rests with the defendant to demand disclosure and establish by a preponderance of the evidence that information about an informant is necessary to the proper preparation of his defense. The burden then shifts to the State to rebut this showing by clear and convincing evidence. *Whittington v. State,* 8 Md.App. 676, 678–79, 262 A.2d 75 (1970). Mere conjecture about the relevancy of an informant's testimony is insufficient to compel disclosure. *United States v. Gonzales,* 606 F.2d 70, 75 (5th Cir.1979).

The trial judge determines whether disclosure is proper by balancing the public interest in protecting the free flow of information against the defendant's right to prepare

his defense. In reaching this decision, the judge should consider the crime charged, possible defenses, possible significance of the informant's testimony and other relevant factors such as the informant's role in the case. *Roviaro v. United States,* 353 U.S. at 62, 77 S.Ct. at 628; *Nutter v. State,* 8 Md.App. at 643, 262 A.2d 80.

█ In many instances, the informant's role will determine whether disclosure is warranted. Disclosure is generally required to ensure a fair trial when an informant plays an active role in the events underlying the crime. *Nutter v. State,* 8 Md.App. at 639–40, 262 A.2d 80. On the other hand, disclosure is not usually necessary when the informant is a mere "tipster" and not an active participant in the illegal activity. *Dorsey v. State,* 34 Md.App. 525, 530–31, 368 A.2d 1036, *cert. denied,* 280 Md. 730 (1977). Usually, however, an informant's actions will fall somewhere between these two extremes. In these situations particularly, the trial court must carefully balance the importance of the informant's testimony in preparing a defense against the government's obvious need to protect its informants. *Suarez v. United States,* 582 F.2d 1007, 1011–12 (5th Cir.1978).

In *Hardiman v. State, supra,* a remarkably similar case, the appellant raised an entrapment [2] defense and moved for disclosure of an informant's identity, arguing that the informant was the only witness who could support his defense. No formal evidentiary hearing was held, the State was not required to respond to the motion and the motion was denied for reasons of security and the personal safety of the informant. On appeal, the trial judge's decision was reversed because the proffer of an entrapment defense met the defendant's burden to show the necessity and relevance of the informant's identity to the preparation of his defense. Since the State had not rebutted the proffer, the trial judge, having nothing to balance, should have granted the motion

---

2. An entrapment instruction was rendered, without objection, in this case.

to compel disclosure. *Id.* 50 Md.App. at 105–08, 436 A.2d 923.

In the case at bar, appellant alleges that disclosure of Wilson's address is mandated by *Hardiman* since he proffered that this disclosure was necessary and relevant to a fair defense. The State replies that the trial judge held a hearing and that appellant did not produce sufficient evidence to prove the necessity to disclose Wilson's address. We disagree with the State's interpretation of the facts of this case.

■ The trial judge may order disclosure of information regarding the informant only after hearing evidence demonstrating relevancy and necessity, and weighing this evidence against the State's reasons for non-disclosure. *Id.* at 99–100, 436 A.2d 923. Here, appellant proffered that Wilson was a necessary witness,[3] presented evidence of relevancy and necessity for disclosure of his address, but was denied disclosure when the trial judge summarily denied the motion without the benefit of rebuttal evidence by the State.

> MR. DWIN [Defense counsel]: So it's clear from their own answer that this piece of paper [Wilson's arrest warrants] wasn't fabricated by the defense; that it did exist; and its purpose was to get Mr. Jones off track in thinking that Clyde Wilson was an informant. And that's police work, and I accept it.
>
> THE COURT: That's police work.
>
> MR. DWIN: That's fine. However, it creates, clearly, the fact that Clyde Costello Wilson becomes a necessary witness for the defense.
>
> THE COURT: All right.
>
> MR. DWIN: I think in this particular case that's as far as I have to go, except I could put Trooper Rose on the stand to testify that Wilson was present when some-

---

**3.** Testifying on his own behalf at trial, appellant told how Wilson had actually pulled him out of a card game and asked him to give the packet of cocaine to Rose, who Wilson had introduced to appellant as one of his best friends.

thing took place on the 5th of June between he and Mr. Jones and Mr. Wilson, and that Mr. Wilson was there and was a witness to some alleged transaction between my client and Trooper Rose. He becomes a person who has evidence to give—

THE COURT: Okay. Do you have anything else?

MR. DWIN: That's all I have, Your Honor.

THE COURT: All right. *I'm going to deny your request for three separate reasons. Number one, when you balance the equity and protect the free flow of information, and to protect the informant, the evidence is that if Wilson's address is revealed, he is in clear and present danger. The second reason for denying it is that the State does not know the whereabouts of Mr. Wilson. And the third reason is simply that the mere fact that he was there, the mere fact that he witnessed this thing by itself isn't sufficient to indicate to the Court that disclosure is necessary and relevant to a fair defense on the merits.* There's no evidence at this point that the informant's testimony could help or hurt the case of the, of really Mr. Jones. There is no evidence here that there could possibly, before the Court, that it could possibly benefit his defense or aid him in any of these pursuits of his constitutional rights. So, I'm going to deny it. Of course, there's no requirement that the State produce an informant per se. Denied address and producing of informant. (emphasis added.)

■ Appellant's proffer detailed Wilson's integral role in his arrest. This showing is sufficient to shift the burden to the State to explain why the disclosure was unnecessary to a fair adjudment of the case. *Id.* at 109, 436 A.2d 923. However, as in *Hardiman,* the court did not call upon the State to respond. Therefore, without the benefit of any evidence from the State, it is difficult for us to understand how the trial judge could declare that Wilson would be "in clear and present danger" if his address was disclosed to appellant. The fact that the State did not know the whereabouts of Wilson is hardly dispositive on the question of his

necessity to appellant's fair defense. The fact that Wilson witnessed Trooper Rose's purchase of cocaine from appellant could have been sufficient to indicate that the information would be useful in proving appellant's entrapment defense. For the benefit of those who will be faced with future motions to disclose information about informants, we reiterate this passage from *Hardiman:*

> Absent some evidence of danger to the life or lives of the informant (or others) threatened by the revelation of the identity, there is a very small auncel on the State's side of the scale. The right to produce one's only defense must predominate over protecting the State's flow of information—as important as that purpose may be.

*Id.* at 109, 436 A.2d 923 (*quoting Roviaro v. United States,* 353 U.S. 53, 63, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957)).

The trial court's failure to require the State to justify its non-disclosure was an abuse of discretion requiring reversal and remand for a new trial. Prior to the new trial, the court shall conduct a new evidentiary hearing on appellant's motion to disclose the informant's whereabouts.

■ Although it may appear at first blush that a limited remand should issue for a new evidentiary hearing on the motion, it would be inappropriate in this case. A limited remand "may be suitable to correct procedures subsidiary to the criminal trial" but it "can never be utilized to rectify prejudicial errors committed during the trial itself." *Gill v. State,* 265 Md. 350, 357, 289 A.2d 575 (1972). In *Gill,* the trial court made an erroneous ruling on the voluntariness of a confession. Since this error occurred in the course of the trial and impacted on both the evidentiary admissibility as well as the evidentiary weight, a limited remand was improper. *Id.* at 357–60, 289 A.2d 575. *Compare with Wiener v. State,* 290 Md. 425, 430 A.2d 588 (1981) (erroneous ruling on appellant's motion to dismiss curable by limited remand because evidence supporting or opposing motion was collateral to the criminal trial). *See also Butler v. State,* 55 Md.App. 409, 433–34, 462 A.2d 1230 (1983) (limited remand appropriate to determine whether claimed violation of an

agreement by police not to prosecute should result in dismissal of action). As the trial court's failure to require the State to justify its non-disclosure could have produced "prejudicial errors committed during the trial itself," such error could not be characterized as collateral to the trial.

■ This determination has a domino effect on case number 6094 wherein the appellant was convicted of maintaining his Cadillac automobile as a common nuisance in violation of Md.Code Art. 27, Sec. 286(a)(5) (see part III *infra*). If appellant's entrapment defense is successful with respect to the distribution charge in number 6028, then the use of the Cadillac on June 5, 1981 would be inadmissible as proof of common nuisance in number 6094. Although there was other evidence of the unlawful use of the automobile, we cannot say the evidence of its usage on June 5, 1981 was harmless beyond a reasonable doubt.

II. *Suppression of Evidence Seized in Search of Cadillac—Staleness Under Fourth Amendment And Maryland's Forfeiture Statute*

In a two-pronged "staleness" attack on the trial court's denial of his motion to suppress evidence seized from the Cadillac automobile,[4] appellant argues that given the lapse of time from June 5 to September 7, 1981, there was clearly no probable cause to believe the car contained contraband on September 7. Relying on traditional 4th Amendment notions of staleness, he argues in effect that the probable cause that may have existed on June 5, 1981 had completely dissipated by September 7, 1981. Similarly, he obliquely contends that even under the forfeiture statute the fatal lapse of time destroyed the viability of probable cause. Because we hold that the seizure was proper under Mary-

---

**4.** The trial judge overruled appellant's motion to suppress under the *Carroll-Chambers-Coolidge* line of cases, finding exigent circumstances and probable cause to believe that drugs or paraphernalia would be found in appellant's automobile. Furthermore, the trial court ruled that Trooper Rose had the right to seize appellant's automobile for forfeiture proceedings under Art. 27, § 286 *et seq.*

land's forfeiture statute, we need not address appellant's 4th Amendment "staleness" argument.

Maryland's relevant forfeiture provisions are set out in Article 27, § 297(b):

> Any property subject to forfeiture under this subheading may be seized upon process issued by any court having jurisdiction over the property, except that seizure without such process may be made when:
>
> * * * * * *
>
> (4) There is probable cause to believe that the property has been used or intended to be used in violation of this subheading.

■ The statute does not, as appellant argues, require that the automobile constitute a common nuisance the day it was seized. The traditional 4th Amendment concept of staleness is not applicable to the seizure of property under Maryland's forfeiture laws. The statute succinctly provides for seizure without judicial process where there is probable cause to believe the property *has been used* in violation of the controlled dangerous substances law. The use of the past tense in the statute contemplates that the property has previously been used to violate the law and does not require evidence of present illegal use.

The United States Court of Appeals for the Fourth Circuit has recently discussed whether seizure of property under the federal forfeiture statute must be contemporaneous with violations of federal narcotics laws. *United States v. Kemp,* 690 F.2d 397 (4th Cir.1982). On November 2, 1978, DEA agents first learned through an informant that Kemp used his Cadillac to distribute drugs on August 19, 1977. This information was not acted upon until the informant's information led to 49 indictments in May, 1979. The government unsuccessfully attempted to locate the vehicle in June and July of 1979. The vehicle was eventually seized on September 20, 1979. Kemp surrendered the keys to the Cadillac and the agents conducted an inventory of its contents. Two ledger books were discovered—one contained controlled dan-

gerous substance transactions, and the other listed phone numbers and addresses. After this seizure, forfeiture proceedings were initiated. The agents had not obtained a search and seizure warrant prior to the seizure of Kemp's car.

The Federal District Court suppressed the seized items because the informant's tip was not sufficiently contemporaneous with the seizure so that probable cause existed the day the car was seized. The Court of Appeals reversed.

Under existing federal law, property is forfeited "the instant it is used in violation of the drug laws." *Id.* at 401. Therefore, Kemp's Cadillac belonged to the government in August, 1977, despite the fact that the car was not seized until September 20, 1979. *Id.* The *Kemp* court distinguished the probable cause necessary in most search cases from the probable cause required for a seizure under 21 U.S.C. § 881(b), the federal forfeiture statute relating to narcotics violations.[5]

> The probable cause necessary for a search to be reasonable is probable cause to believe that law enforcement officials will find in a certain place contraband or evidence of a crime. *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). Such probable cause can become stale because contraband and evidence can be moved from the place to be searched. *See, e.g., Andresen v. Maryland*, 427 U.S. 463, 478–79, n. 9, 96 S.Ct. 2737, 2747–48 n. 9, 49 L.Ed.2d 627 (1976); *United States v. Steeves*, 525 F.2d 33 (8th Cir.1975).

> Section 881 of 21 U.S.C. is a seizure statute, however, not a search statute. *United States v. Bush*, 647 F.2d 357 (3d Cir.1981). The statute does not purport to authorize an intrusion on a 'legitimate expectation of privacy,' which is now the focal point of Fourth Amendment pro-

---

**5.** Maryland's controlled dangerous substances laws have been patterned after federal legislation eventually enacted as the comprehensive Drug Abuse Prevention and Control Act of 1970. *Doswell v. State,* 53 Md.App. 647, 651 n. 3, 455 A.2d 995 (1983). The federal seizure provision is virtually identical to Md.Code Art. 27, § 297(b).

tection. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

\* \* \* \* \* \*

Once the property 'has been used,' in violation of the law, its innocence cannot be regained, at least while still owned by the perpetrator of the violation. *See United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); *Weathersbee v. United States,* 263 F.2d 324 [4th Cir.1958].

*Id.*

The Court went on to hold that there is no need for "contemporaneity of events establishing probable cause with seizure of property if the Attorney General has reasonable cause at the time of the seizure to believe that the property 'has been used' in violation of the drug laws." *Id.* at 402.

█ Maryland's forfeiture statute does not permit the federal concept of "automatic forfeiture" upon illegal activity. Instead, § 297(g)–(w) sets out an elaborate due process proceeding ensuring that the owner of a seized motor vehicle receives notice of and an opportunity to be heard at all forfeiture proceedings.

█ The question then remains as to how long a governmental agency can wait after it has probable cause to believe that property has been used in violation of the controlled dangerous substances laws before seizing the property. While holding that the passage of time was irrelevant to the determination of statutory probable cause, the *Kemp* court recognized that long delays are indeed relevant factors if a due process claim is raised. *United States v. Kemp,* 690 F.2d 397, 401–02 n. 5 (4th Cir.1982). We concur with this reasoning and believe that such determinations ought to be made on a case-by-case basis. An examination should be made to determine the reasons for the delay. If law enforcement officials have a legitimate reason for postponing seizure after gaining knowledge of illegal acts, such as a need to protect the secrecy of an ongoing

investigation, then no due process violation has occurred. We concur with the reasoning of the Court of Appeals of North Carolina that:

> To fix a definite time within which officers must act to seize a vehicle after they have seen an illegal drug transaction might seriously hinder the effectiveness of large scale undercover drug investigations in which the officers are trying to find the big drug dealers through various smaller operators. If a vehicle must be seized immediately, or very soon after the commission of a crime, it is likely that the detective's cover would be destroyed, resulting in increased danger to that officer if he continues to work in the investigation or, if he must then drop out of the operation, the waste of his special efforts, requiring much training and planning, whereby he was enabled to make effective contact with those involved in illegal drug trafficking. Thus, though a situation may arise where the length of time, elapsing between the commission of a crime and the later issuance of an order of seizure, is too unreasonable to be sustained, it suffices to say that we are not confronted with such a case here because the process was served within a month after the officer saw the violation occur.

*State v. Hall,* 52 N.C.App. 492, 279 S.E.2d 111, 114 n. 1, *disc. review denied and appeal dismissed,* 304 N.C. 198, 285 S.E.2d 104–05 (1981).

However, if seizure is delayed for vindictive reasons or to circumvent the requirement for a search warrant, due process requires that any evidence gained from this property be suppressed. *United States v. Kemp, supra* at 402.

■ The facts of the case at bar reveal a three-month delay between the State's first knowledge of probable cause and the seizure of appellant's property. We hold that Trooper Rose's seizure was not unduly delayed because the seizure was the product of an ongoing investigation of appellant's illegal activity. To its credit, the legislature has attempted to curtail drug traffic in this State by authorizing the seizure of motor vehicles without process. *Prince*

*George's County v. Blue Bird Co., Inc.,* 263 Md. 655, 662, 284 A.2d 203 (1971). However, in order to protect the public from due process violations, the legislature has established safeguards with regard to the seizure of motor vehicles. Section 297(f)(1) provides:

> In exercising the authority to seize motor vehicles pursuant to this section the following standards shall be utilized:
>
> (1) A motor vehicle used in violation of this section shall be seized and forfeiture recommended to the State's attorney when:
>
> (i) Controlled dangerous substances in any quantity are sold or attempted to be sold in violation of this subtitle;
>
> (ii) Although the violator has not sold or attempted to sell controlled dangerous substances in violation of this subtitle, an amount of such substances or paraphernalia is located which would reasonably indicate that sale is contemplated by the violator.
>
> (iii) The total circumstances of the case dictate that seizure and forfeiture is justified; these circumstances would include such factors as the following:
>
> (a) The possession of controlled dangerous substances;
>
> (b) An extensive criminal record of the violator;
>
> (c) A previous conviction of the violator for a controlled dangerous substances violation;
>
> (d) Corroborated information is developed indicating that the violator is or was recently a seller, or frequently associates with individuals known to be distributors of illegal controlled dangerous substances or paraphernalia;
>
> (e) Circumstances of the arrest;
>
> (f) The manner in which the vehicle was being used.

We hold that Trooper Rose's actions complied with this subsection.

(i) On June 5, 1981, Rose's purchase of cocaine was consummated upon appellant's visit to the Cadillac.

(ii) When seized, the Cadillac contained amounts of controlled dangerous substances and paraphernalia—a syringe

and needle, foil wrappers, glassine envelopes and a list of names and phone numbers—indicating sales were contemplated.

(iii) A cumulative examination of all these circumstances leads us to the reasonable conclusion that appellant's motor vehicle was being used as a travelling warehouse for drug distribution and that the seizure was justified. The Trooper's surveillance established that appellant drove the Cadillac with Delaware license tags and that this car was parked outside a Booth Street residence in Elkton on several occasions. The June 5th sale and the June 18th trip to Aberdeen demonstrated that drugs were present in the vehicle. Clyde C. Wilson, an informant, introduced Rose to appellant on June 5th. This introduction corroborated the notion that appellant was a seller—a notion formed during Rose's prior undercover investigation of appellant and his vehicle.

The trial court did not err in overruling appellant's motion to suppress.

### III. *Maintaining a Common Nuisance (No. 6094)*

In the second count of the indictment in Criminal No. 6094, the State charged that the appellant

> on or about the 5th day of June and continuing through the 7th day of September . . . unlawfully did keep and maintain a certain common nuisance, to wit: 1966 Cadillac Coupe de Ville, silver in color, Delaware registration No. 201–274, which was then and there resorted to by drug abusers for the purposes of the illegally administering of cocaine, and marijuana, controlled dangerous substances, and which was used for the illegal manufacture, storage, distribution, and concealment of said drugs. . . .

Recognizing that "in order to sustain a conviction for common nuisance under Art. 27, Sec. 286(a)(5), there must be evidence from which the habitual, recurring or continuing nature of the use of the vehicle can be proven," the appellant argues that "here, proof at trial failed to establish the necessary element of a continuing offence." We disagree.

According to Trooper Rose, on the occasion of two separate drug transactions, June 5 and June 9, 1981, the Cadillac was used or at least inferentially used as a place for "storage or concealment of controlled dangerous substances." Further, Trooper Rose "had seen him [the appellant] from June 5 to June 9 on at least two other occasions operating that Cadillac in and out of the complex there on Booth Street." Additionally, on June 18, after concluding a drug transaction involving the sale of opium to D.E.A. Agent Moses, according to Trooper Rose, appellant said, "Well, if you guys don't want any Coke, I got to take this down to Aberdeen. I'm on my way down to Aberdeen with this Coke." Shortly thereafter, he was observed by Trooper Rose operating the silver Cadillac in the general direction of Aberdeen.

Thus, the jury was presented with evidence, if believed, that the appellant was using the subject vehicle to store and conceal drugs as part of his drug trafficking business. The triers of fact might or might not have inferred that that drug trafficking continued through September 7, as alleged in the indictment. After considering the evidence in the light most favorable to the prosecution, the jurors as rational triers of fact could have found the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Rusk,* 289 Md. 230, 245, 424 A.2d 720 (1981).

IV. *Motion to Suppress Evidence and Statement in 6182*

On December 16, 1981, at about 1:15 P.M. Trooper Kenneth Thrasher, of the Maryland State Police, clocked a vehicle being operated by appellant at 72 miles per hour in a 55 mile zone. In preparation of issuing a speeding ticket, Trooper Thrasher requested appellant's driver's license and registration. Upon running a routine check on appellant's driver's license, Trooper Thrasher was informed that appellant was the subject of an open warrant from the Cecil County Sheriff's Department. Appellant was placed under

arrest, handcuffed, and then searched "incident to that arrest" according to Trooper Thrasher. The search revealed a plastic baggie containing a greenish brown vegetable matter suspected to be marijuana, three aluminum foil packets about the size of a postage stamp containing a white powder, a maroon pouch containing slightly more than $2,000 in cash, and a pack of rolling papers. The white powder was later identified as cocaine.

Appellant was transported to the Maryland State Police Barracks where he was, among other things, charged with possession of heroin and possession with intent to distribute heroin. Upon learning of the charges, appellant stated, "That's not heroin. It's cocaine."

Subsequently, he was questioned by Corporal Wassmer, a criminal investigator for the Maryland State Police. After reading the "*Miranda*" rights to appellant, appellant indicated that he wanted to talk with Corporal Wassmer. According to Corporal Wassmer, at one point appellant stated:

> Look, man, I want to get something straight. This stuff in those bags are not heroin. It is cocaine. I just purchased it in New York and was about to take it back to Aberdeen and trade it for 2 cases of .38 guns . . . that are stolen guns. I was going to tell the State Police about the guns. I can still get it. I mean, I can still get the guns if I can get out of here.

Contending that the police were not justified in detaining appellant "on a simple speeding ticket to obtain a license check," he seeks to suppress the marijuana, cocaine and statements.

It is now settled that police are entitled to make a search incident to a custodial arrest for a traffic infraction just as surely as they are as an incident to an arrest for any other crime. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). *See also* R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure*, § 29.4 (1983). In any event, the subject

arrest was not for a traffic infraction but rather for an outstanding warrant.

We agree with the trial court's analysis:

He was arrested as part of a police team. At this point, the defendant was placed under arrest and, when he is under arrest, the officer without even articulating any reason, has the right to search defendant.

Appellant's argument is without merit.

### V. *Possession In Quantity (6182)*

██ Because of the small quantity (4.2 grams) of cocaine found on his person by Trooper Thrasher, appellant contends that the evidence is insufficient to support the conviction for possession of a sufficient quantity of cocaine to reasonably indicate under all circumstances an attempt to distribute. *Citing Waller v. State,* 13 Md.App. 615, 284 A.2d 446 (1971), *cert. denied,* 264 Md. 752 (1972), he argues that the quantity of the controlled dangerous substance in possession is a question of primary importance. In *Waller,* we held that:

[T]he legislature, in using the words "in sufficient quantity to reasonably indicate under all circumstances an intent," meant no more and no less than *with intent,* as that phrase is well known in the law.

*Id.* 13 Md.App. at 618, 284 A.2d 446. We further pointed out in *Waller* that intent is usually determined by inference, rather than by direct proof. *Id.* Here there is direct proof of intent, and little, if any, need to infer based on the quantity of cocaine possessed by the appellant. While quantity of the controlled dangerous substance might be of primary importance where there is no other manifestation of intent, and the inference is only that which can be drawn from the quantity (small quantity indicating lack of intent, large quantity indicating intent), quantity is of little or no importance where there is an express declaration of intent as in the case *sub judice.* The jurors as rational triers of the fact could have and obviously did believe that the appellant was going to take the cocaine to trade it in for guns.

The evidence was clearly sufficient to sustain appellant's conviction. *See Rusk, supra,* and *Jackson, supra.*

### VI. *Sentencing*

 Appellant contends that he was not properly sentenced in cases 6028 and 6182. Since we are reversing the conviction in 6028, we need not address the issue at all in that case. As appellant made no objection when the sentences were passed in 6182, he has not preserved the issue for appellate review. Maryland Rule 1085.

 Even if the objection was not waived, it is clear that the trial judge was sentencing the defendant pursuant to a conviction under Count No. 1 wherein the appellant was charged with possession of cocaine "in sufficient quantity to reasonably indicate under all the circumstances an intent to distribute such Controlled Dangerous Substance. . . ." The court's description of the first count "possession of cocaine" obviously was no more than a verbal abbreviation of the charge. The docket entries reflect a conviction under Count No. 1 and a commitment to the jurisdiction of the Commissioner of Correction for a period of 20 years. The judge's sentence was neither contradictory or illegal.

IN CASE NO. 6182, JUDGMENT AFFIRMED; IN CASES NOS. 6028 AND 6094, JUDGMENTS REVERSED AND EACH CASE IS REMANDED FOR NEW TRIAL; COSTS TO BE DIVIDED BETWEEN APPELLANT AND CECIL COUNTY.