## GILBERT BROWN GILL *v.* STATE OF MARYLAND

[No. 320, September Term, 1970.]

*Decided March 11, 1971.*

The cause was argued before ORTH, THOMPSON, and MOYLAN, JJ.

*Edward C. Covahey, Jr.,* with whom was *F. Vernon Boozer* on the brief, for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Barbara L. Goldberg, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Gilbert Brown Gill, the appellant, was convicted by the Circuit Court for Baltimore County, in a court trial, of robbery with a deadly weapon and kidnapping. He was sentenced to two concurrent fifteen year sentences. On appeal, he contends his confession to the crimes was improperly admitted into evidence.

The record shows Gill was arrested on January 9, 1970

for the crimes which occurred on December 30, 1969, at which times Gill was sixteen years of age, having completed the seventh grade in school. The important parts of the testimony relating to the confession can be quoted. Detective Corporal Joseph J. Corrigan, of the Baltimore County Police Department, testified as follows:

"Q. When if anything did you tell him prior to taking the statement, Officer?"

\* \* \*

"A. Consisting of he had a right to remain silent, anything he said could be used against him in a court of law. He was intitled [sic] to an attorney. If he couldn't afford an attorney the Circuit Court of Baltimore County would provide him with an attorney, and having this in mind did he wish to make any statement to us with the understanding that at any time during the interview his rights, his constitutional rights would be adhere to and would be recognized until an attorney would be present."

\* \* \*

"Q. . . . Now, after so advising Mr. Gill what if anything did he say? Did he seem to understand what you were talking about or did he ask questions about it?

"A. Made no statement at all and remained silent. Nothing more was said.

"Q. Then what happened?

"A. He was transported to Baltimore County Police Headquarters by myself and Detective Hyson. Upon arrival at Police Headquarters information was attempted to be attained [sic] as to where his parents were so they could be immediately notified. We couldn't contact his parents. There was no phone. We permitted him to make a number of phone calls before any interview.

"Q. Were you there when he made the phone calls?

"A. He was in within my sight. I did not get as far as to see what he had to say or anything. I gave him the privacy of the telephone.

"Q. Approximately how many calls did he make?

"A. I believe it was three. One was to his grandmother who I talked to. I believe her name was Jones, Mrs. Jones, who lives in Ellicott City and in talking with Mrs. Jones I explained to her the charges that were pending in Baltimore County and also requesting that he—that she contact his parents. Over the phone I did relate to Mrs. Jones of the rights that I had given Gilbert and more or less she said . . ."

\* \* \*

"Q. Let me ask you, Officer, did you make the defendant any promises, threats or inducements in any manner to give you a statement?

"A. No, ma'am. None whatsoever."

\* \* \*

"Q. Did you just read him the Miranda warning?

"A. No. The waiver was read on the back also.

"Q. Now, you said he didn't say anything at that time, is that correct?

"A. Something. Maybe, 'I know, I know.' But nothing that would be evident [sic] to the case."

\* \* \*

"Q. Did you make any effort to contact the Howard County Police and have then [sic] contact his parents?

"A. Yes, sir.

"Q. What did they tell you?

"A. It came back they had no answer at the door."

* * *

"Q. But you can remember that in your own recollection, is that your testimony, that he did ask for a lawyer sometime but you think it was the second day?

"A. If he made any mention of a lawyer and he wanted a lawyer he would have had a lawyer."

* * *

"Q. Did you testify on direct that you read the little white card?

"A. Yes, sir.

"Q. What did you do, just read it?

"A. No, sir. I did not just read it. After each and every caption on the card or rules set forth by Miranda I ask [sic] him completely and exclusively had he understood it and also to relate to me what his interpretation was of what I had said to him."

The record shows Gill had been arrested by Baltimore City Police officers. Corporal Corrigan and Detective Hyson received him from the Baltimore City office at 3:45 P.M. and transported him to Towson, arriving at 4:00 P.M. After the telephone calls, questioning began at 5:00 P.M. and the written statement was signed at 5:50 P.M. After arguments of counsel, the court ruled the confession was voluntary and admissible. However, at the request of defense counsel, testimony of Gill on the issue was heard; the trial judge again ruled the confession was voluntary and admissible without hearing further arguments or giving further reasons. The testimony of Gill in its relevant parts was as follows:

"Q. You heard from Corporal Corrigan's testimony that he left the room, left you in the room at one time with Detective Hyson, do you remember that?

"A. Yes, sir.

"Q. Did Detective Hyson say anything to you when you were in the room with him?

"A. Yes, sir.

"Q. What did he say to you?

"A. He told me I wasn't in Baltimore City now. I was at his place and if I gave him more smart questions he was going to punch me in my face.

"THE COURT: Where was this?

"A. Towson Headquarters.

"THE COURT: Towson. Okay.

"BY MR. COVAHEY:

"Q. Detective Hyson told you that?

"A. Yes, sir.

"Q. This was before you made your statement?

"A. Yes, sir.

"Q. Did any of the officers say anything to you about making a statement, that you would feel better or get it off your chest or anything of that nature?

"A. Yes, sir. And plus Detective Corrigan came running in the room and started screaming at me and said he was going to arrest Cooky if I didn't confess.

"Q. Go and arrest Cooky?

"A. Yes, sir.

"Q. Who was Cooky?

"A. My fiancee."

Officer Hyson did not testify at the trial. Although Corporal Corrigan did not retake the stand for the purpose of denying the specific threat to arrest the fiancee, to which Gill testified, Corrigan did, on direct examination, generally deny any type of threats to Gill.

Although Gill makes a number of arguments as to why the confession should not have been admitted into evidence, the only persuasive one is that after Gill tes-

tified as to the specific threat made by Officer Hyson, Officer Hyson was not called to the stand to deny the threat. See *Mercer v. State,* 237 Md. 479, 206 A. 2d 797 and *Streams v. State,* 238 Md. 278, 208 A. 2d 614 holding that under the circumstances of those cases, the failure of the police officers involved to take the stand to deny a direct accusation by the appellant would indicate that the State had failed to meet its constitutional burden to prove the voluntariness of the confession.[1] We will not, however, reverse the case for a new trial but remand it for a redetermination of the question of voluntariness after the taking of additional testimony under the principles discussed in *Murphy v. State,* 8 Md. App. 430, 260 A. 2d 357 and *Gardner v. State,* 10 Md. App. 233, 269 A. 2d 186. Although the record shows that the *Miranda* warnings were given by reading from a printed card, the card was neither introduced into evidence nor the precise warnings read into the record as careful prosecution would require. Careful prosecution would have also required that Corporal Corrigan be recalled to testify concerning the specific statement as to the threat of arrest of the fiancee. These matters should be covered on rehearing.

The other arguments of Gill to support his contention that the confession was improperly admitted have been previously decided by this Court, and under the total circumstances of the instant case are not of themselves controlling. In *Lynch v. State,* 9 Md. App. 441, 265 A. 2d 283 we held that the signing of a written waiver prior to the taking of a written or oral confession, as in the instant case, would be sufficient to show a waiver of the constitutional rights. Even without this, the circumstances of this case and the officer's reading and explaining of the waiver provision from the card would constitute a sufficient waiver to support the admissibility of

---

1. Of course, if the threat had been previously, specifically denied recall would have been unnecessary. *Burks v. State,* 1 Md. App. 81, 85, 227 A. 2d 355.

the confession, assuming the language on the card as to waiver was clear. See *McCoy v. State,* 8 Md. App. 127, 131, 258 A. 2d 611. Neither is the mere age of the boy, nor his lack of a good education, sufficient in themselves, to show the lack of an intelligent waiver of the constitutional right not to make a statement. See *Miller v. State,* 251 Md. 362, 247 A. 2d 530, *Harris v. State,* 1 Md. App. 318, 229 A. 2d 604, *Wiggins v. State,* 4 Md. App. 95, 241 A. 2d 424, and *McCoy v. State, supra.*

> *Case remanded for further proceedings in accordance with this opinion, and return to this Court upon the redetermination of the question of voluntariness.*