## GILL *v.* STATE OF MARYLAND

[No. 287, September Term, 1971.]

*Decided April 12, 1972.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Edward C. Covahey, Jr.,* with whom was *F. Vernon Boozer* on the brief, for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Edward F. Borgerding, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The appellant here, Gilbert Brown Gill, was apprehended by police in Baltimore City on January 9, 1970

and then transferred to the custody of Detective Corporal Joseph Corrigan and Detective James Hyson, two Baltimore County policemen. He was charged with the commission on December 30, 1969 of various crimes including the armed robbery and kidnapping of a Diamond Cab Co. driver, Edward Dembeck.[1] At the time of his arrest Gill was sixteen years old and had a seventh grade education. In the Circuit Court for Baltimore County, at a bench trial, the accused was found guilty by Judge Maguire and sentenced to serve two concurrent fifteen year terms in prison. His conviction was based principally upon a confession he made to Corrigan and Hyson but which at trial he disclaimed was voluntary. After hearing the testimony of only Corrigan and Gill as to whether the confession was uncoerced the trial court, over objection, received it in evidence.

The corporal testified that while he and Hyson were en route with the suspect, on January 9, 1970, from Baltimore City to county police headquarters in Towson, they read him the Miranda rights and a waiver to which he made no reply. Corrigan further stated that upon arriving at their destination Gill was taken to an interrogation room where he was permitted to make several telephone calls. The Miranda warnings were then again read to appellant and this time, according to the policeman, the accused responded, affirmatively waiving his rights and, without being threatened or coerced, he confessed. Following this he signed a written waiver of his rights. Corrigan testified that the young suspect's grandmother had been contacted after he was taken into custody but that the police had been unsuccessful in their attempts to notify the boy's parents. At the time Gill made his statement to the policemen neither his parents nor his grandmother were in attendance. At trial, the appellant objected to the admission in evidence of the confession and, when testifying for the limited purpose

---

1. Gill and co-defendant, Frederick Leo Switzer, were indicted on seventeen counts, all relating to their alleged activities on December 30, 1969.

of contesting its validity, he claimed that it was induced by the threats of the two detectives. Gill said that while he was alone with Hyson, "He told me I wasn't in Baltimore City now. I was at his place and if I gave him more smart questions he was going to punch me in my face . . . . Detective Corrigan came running in the room and started screaming at me and said he was going to arrest Cooky [my girl friend] if I didn't confess." When he was cross-examined, the accused stated that: "Detective Hyson said he was going to arrest Cooky." While Corrigan generally repudiated these allegations at trial, Detective Hyson did not testify.

Gill appealed his conviction to the Court of Special Appeals, where he contended Judge Maguire erred in admitting the confession because the prosecution failed to meet the affirmative burden of establishing, prima facie, that it was voluntary. Appellant claimed that once the accusation was made that Hyson, while alone with him, had coercively induced his statement, then it became necessary for this charge to be specifically refuted. The Court of Special Appeals agreed and concluded: "the failure of the police officers involved to take the stand to deny a direct accusation by the appellant would indicate that the State had failed to meet its constitutional burden to prove the voluntariness of the confession." *Gill v. State,* 11 Md. App. 378, 384, 274 A. 2d 667 (1971).

That determination is consistent with the decisions of this Court which have made it abundantly clear that before a suspect's statement can be received in evidence the State has the affirmative duty of showing it was freely made and not the product of promises or threats. This does not require that each person who had casual contact with the accused, once he was in police custody or being interrogated, must testify to the voluntariness of the confession in order for the prosecution to satisfy its burden. But when it is contended that someone employed coercive tactics to obtain inculpatory statements, the charge must be rebutted. Here it is claimed the induce-

ment occurred while Gill was alone with Hyson. Since it is uncontradicted that the suspect was in fact in the sole presence of this police interrogator, that specific person must rebut the allegations of coercion as no one else is qualified to do so. *Streams v. State,* 238 Md. 278, 208 A. 2d 614 (1965) ; *Smith v. State,* 237 Md. 573, 207 A. 2d 493 (1965) ; *Mercer v. State,* 237 Md. 479, 206 A. 2d 797 (1965) ; *Combs v. State,* 237 Md. 428, 206 A. 2d 718 (1965) ; *Bean v. State,* 234 Md. 432, 199 A. 2d 773 (1964) ; *Abbott v. State,* 231 Md. 462, 190 A. 2d 797 (1963) ; *Bryant v. State,* 229 Md. 531, 185 A. 2d 190 (1962) ; *Ralph v. State,* 226 Md. 480, 174 A. 2d 163 (1961), *cert. denied,* 369 U. S. 813 (1962) ; *Presley v. State,* 224 Md. 550, 168 A. 2d 510 (1961), *cert. denied,* 368 U. S. 957 (1962). From the facts of this case it is readily apparent that since Hyson did not testify the State failed to meet its burden of establishing the confession was voluntary. However, while we agree with the Court of Special Appeals that the admission of the statement was obviously improper, we granted certiorari to consider the propriety of the procedure that court adopted in attempting to rectify the error. It did not reverse the judgment and order a new trial but rather said: "We . . . remand [the case] for a redetermination of the question of voluntariness after the taking of additional testimony", following which the case was to be returned to that court without further order. *Gill v. State, supra* at 384, 385.

In accordance with this mandate, the trial court conducted a hearing for the sole purpose of re-deciding whether the confession was admissible. At this proceeding, both Corporal Corrigan and Detective Hyson testified at length as to the manner in which the Miranda warnings and waiver were explained to appellant. Each explicitly denied that they had at any time threatened young Gill. As a result Judge Maguire reaffirmed his earlier conclusion that the confession was voluntary when he said:

"[I]n light of the fact there is a denial by both

Detective Hyson as to any threat made to the Defendant and by Corporal Corrigan as to any threat to the Defendant, the Court feels a complete and proper explanation of the Miranda Warning and Waiver to the Defendant was given."

As directed, the case was then immediately returned to the Court of Special Appeals where, in an unreported opinion, it agreed that the confession was admissible and affirmed the conviction.

The Court of Special Appeals claimed the authority to utilize the restricted remand procedure in this situation by relying on its own decisions in *Gardner v. State,* 10 Md. App. 233, 269 A. 2d 186 (1970), *cert. denied,* 404 U. S. 937 (1971) and *Murphy v. State,* 8 Md. App. 430, 260 A. 2d 357 (1970). However, these two cases cite no precedent in Maryland, statutory or otherwise, as supportive of this procedure. And we have been unable to find any occasion where, in similar circumstances, this Court has employed such a procedural device instead of granting a complete new trial. Our failure to adopt this method does not, in and of itself, render it impermissible if there are no legal impediments which prohibit its use. But, while it is unnecessary to pursue the point, there is authority which indicates that in the absence of a legislative enactment or rule (adopted by this Court pursuant to its Constitutional privilege, Art. 4, § 18A) prescribing this procedure, our power as well as that of the Court of Special Appeals "is limited to a simple reversal [or affirmance] of the judgment." *McDonald v. State,* 45 Md. 90, 98 (1876). The State, in its brief, claims that: "Such action by the Court of Special Appeals is clearly permitted and in fact mandated by Maryland Rule 1071". We agree that rule, as well as Rule 871 which is identical, though apposite for this Court, pertains to remand; but it does not apply to the situation here. Rule 1071 provides:

"a. *For Further Proceedings.*

If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of the pleadings, introduction of additional evidence, or otherwise, then this Court, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, may order the case to be remanded to the lower court. Upon remand to the lower court, such further proceedings shall be had by amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, as may be necessary for determining the action upon its merits as if no appeal had been taken and the judgment from which the appeal was taken had not been entered; provided, however, that the order entered by this Court in remanding said case, and the opinion of this Court on which said order is passed, shall be conclusive as to the points finally decided thereby. In such an order remanding a case this Court will express the purpose for so remanding and in its opinion filed with said order will determine all questions which may have been properly presented.

b. *In Criminal Case.*

If in an appeal in a criminal action this Court shall reverse the judgment for error in the judgment or in the sentence, this Court will remand the case to the lower court in order that such court may pronounce the proper judgment or sentence."

Subsection b, by its very terms, permits a remand, but one which is specifically confined to the pronouncement of a proper judgment or sentence. Its origin was in response to *McDonald v. State, supra* at 98, where our predecessors said: " 'it is not competent for this court to pass a new sentence upon this prisoner, nor to remit the case to the Criminal Court.' Our power is limited to a simple reversal of the judgment." According to *Lynn v. State,* 84 Md. 67, 83, 35 A. 21 (1896) :

> "After the case of *McDonald v. State* . . . was decided, the Legislature passed a law to meet the result of that decision, and it is now provided by section 78 of Article 5 of the Code that in case this Court reverses a judgment for error in the sentence, &c., it shall remand the record to the Court below in order that such Court may pronounce a proper judgment." [2]

It is clear from its limiting language that subsection b is not applicable here. Assuming that subsection a can be invoked in criminal causes or that an appellate court has authority, independent of rule or statute, to order a restricted remand, we hold that while it may be suitable to correct procedures subsidiary to the criminal trial, it can never be utilized to rectify prejudicial errors committed during the trial itself.[3] The admissibility of a confession is always an integral part of the trial. This is not only true of the confession, per se, but also encompasses the entire process of ascertaining, prima facie, that it was legally obtained.

The question of the voluntary nature of a confession is initially decided by the trial judge and involves a mixed question of law and fact. If the judge receives it in evidence, its admission then becomes prima facie proof

2. Art. 5, § 78 of the 1888 Code was later substantially codified in the 1951 Code as Art. 5, § 87. The first clause of that statute is the substance of Rule 1071 b. The last clause of the statute, providing credit on a new sentence for time already served, is now retained in Art. 5, § 17 of the Code (1957, 1968 Repl. Vol.).

3. Rule 1071 a is derived from Art. 5, § 42 of the 1951 Code which originally applied to appeals from courts of equity.

that the statement was freely and voluntarily given. Once received, the evidence pertaining to the admissibility of the confession, which was first heard by the judge, is then submitted to the jury for its ultimate consideration. *Presley v. State, supra* at 559. Despite the fact that the accused's statement is received in evidence, if, from all the testimony in the case, the jury is not satisfied beyond a reasonable doubt that it was the free and voluntary expression of the suspect, then they must disregard it in determining his guilt or innocence. Similarly, if they find that the proof shows beyond a reasonable doubt that the accused of his own volition made the confession, then they should consider it, together with all the other evidence, in arriving at a verdict. *Smith v. State,* 189 Md. 596, 604, 56 A. 2d 818 (1948). This view was recently reiterated in another case, *Smith v. State,* 237 Md. 573, 581, 207 A. 2d 493 (1965), which quoted from *Ralph v. State, supra* at 487:

> " '* * * the question of the admissibility of the confession was a mixed one of law and fact— the only duty of the trial court, having first considered the evidence produced on both sides, was to decide whether the *prima facie* proof was such as to establish that the confession was freely and voluntarily made, leaving * * * the ultimate determination of whether the confession was in fact voluntary and whether it should be believed to the * * * trier of facts.' "

See also *Jones v. State,* 229 Md. 165, 174, 182 A. 2d 784 (1962); *Hall v. State,* 223 Md. 158, 169, 162 A. 2d 751 (1960). Consequently, in a jury trial, assuming the confession is received, the evidence concerning its voluntariness is presented twice; first to the judge alone and later with the jury in attendance. Of course, should the judge initially determine that the confession was involuntary it is never even presented to the jury.

Therefore, it becomes quite apparent that a remand solely for a redetermination of the confession's volun-

tariness can never be permitted in a jury trial since even if the trial judge again concludes the statement was voluntary, that only establishes, prima facie, it was uncoerced. The jury still must have the opportunity to consider the evidence pertaining to its voluntariness before deciding whether the accused is guilty or innocent. This inviolable jury function would be eliminated unless the judgment was reversed and a new trial awarded.

Likewise, in a bench trial, the compelling logic of the previous discussion remains applicable because the judge assumes the additional role as the trier of fact and performs a dual function. Since the appellant here was tried by the court without a jury, Judge Maguire's sole duty when he considered receiving the confession was to determine if there was prima facie proof of its voluntariness. However, once the statement was received, the judge re-assumed his role as trier of fact which is no different than a jury's role. While it is unnecessary that he rehear the testimony concerning the manner in which the confession was obtained, that evidence should be reviewed by him in his fact finding role, taking into account all the testimony presented during the trial. He should then digest all the various pieces of the complete puzzle in the totality of his function as trier of fact and decide if the inculpatory statement was voluntary beyond a reasonable doubt. Just as with the jury, if the judge concludes the confession was voluntary he should again consider it together with all the other evidence as a composite whole before making the ultimate determination of whether the accused is guilty or innocent. Similarly, if he finds the statement was not the free expression of the suspect he must disregard it in arriving at a verdict. *State v. Hutchinson,* 260 Md. 227, 234, 271 A. 2d 641 (1970); *Ralph v. State,* 226 Md. 480, 174 A. 2d 163 (1961). It must be obvious that in a remand for a limited purpose the trial court is not able to consider the new testimony in one of its two roles. While the judge, at this rehearing, may still conclude the confession is admissible, there is no sure way of knowing that,

as trier of fact with this new evidence before him, the decision on guilt or innocence will remain the same.

At oral argument, the State made the rather dubious claim that a restricted remand is advisable because it lessens the amount of time spent in litigation. While we would look favorably upon an efficacious method of containing the burgeoning load which the judicial system in this country now carries, we do not feel that the limited remand device in any significant manner would promote this result. If anything, it potentially has the opposite effect—a proliferation of litigation. In any event, we can never allow expediency to overshadow the necessary and desirable procedures which have long been established and followed to protect an accused from having a disputed confession erroneously used at trial.

We cannot approve the manner in which the Court of Special Appeals attempted to correct the trial defect here and consequently reverse its judgment as well as that of the trial court.

*Judgments of the Court of Special Appeals and the Circuit Court for Baltimore County reversed and the case remanded for a new trial.*

*Costs to be paid by the County Council of B a l t i m o r e County.*