## CLIFFORD SUNDAY JENKINS *v.* STATE OF MARYLAND

[No. 649, September Term, 1974.]

*Decided April 7, 1975.*

The cause was argued before MORTON and MENCHINE, JJ., and FREDERICK J. SINGLEY, JR., Associate Judge of the Court of Appeals, specially assigned.

*Robert E. Farnell, III,* with whom were *Hubert H. Wright, IV* and *Farnell, Freeland & Wright* on the brief, for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *William B. Yates, II, State's Attorney for Dorchester County,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Clifford Sunday Jenkins, found guilty by a jury in the Circuit Court for Dorchester County of the crime of incest,

has appealed to this Court. He advances five reasons why his conviction should be reversed: (i) insufficiency of the evidence; (ii) the admission of his confession; (iii) the exclusion of testimony of his personal physician; (iv) the exclusion of testimony of a character .witness; (v) the admission of his testimony on cross-examination that two of his children were in foster homes.

Jenkins, a 57-year-old Dorchester County antique dealer, was arrested by Trooper Legg of the Maryland State Police on 27 January 1974 in execution of an arrest warrant sworn out by Jenkins' 14-year-old daughter, Linda, who had charged that her father had engaged in sexual intercourse with her on a number of occasions, commencing on 15 January 1973, and continuing for about two and one-half months.

Trooper Legg took Jenkins to the Maryland State Police detachment office at Cambridge, Maryland, where he was met by Corporal Donald H. Cox. Corporal Cox read to Jenkins the Miranda warnings from a card supplied by the State Police, and had Jenkins sign the card. He explained the charges to Jenkins, and according to Cox, Jenkins' only statement at this time was that "He . . . could not believe the charge of incest was being brought against him by his daughter, and further added that any person who would have sexual relations with his daughter would have to be sick." Jenkins was taken to the Dorchester County sheriff's office.

On 29 January, Jenkins appeared at a bail hearing before Commissioner McKelvey of the District Court. The court record shows that he was advised of his right to counsel, and that he indicated that he wished to employ his own lawyer.

There is a conflict in the testimony as to what happened on the 30th, the following day. Corporal Cox said that he received a telephone call from Deputy Sheriff Owen Lewis of Dorchester County, telling him that Jenkins wanted to speak with him. Jenkins' version was that on 28 January he had asked the "tier runner" at the jail to leave a note on the sheriff's desk asking Corporal Cox "to see Mr. Farnell, my lawyer," "[a]nd to try to get me a bondsman."

Cox went to Cambridge on the afternoon of 30 January, and saw Jenkins at the Dorchester County sheriff's office. He again read the Miranda warnings to Jenkins, and had Jenkins sign the card. When it became apparent that Jenkins was ready to make a statement, Cox once more read the Miranda warnings which appeared on the statement form; typed in Jenkins' responses that he understood the warnings, that he wanted to make a voluntary statement, and that he was waiving his right to have a lawyer present. Cox then typed a short statement in which Jenkins admitted that he had tried to have intercourse with Linda on one occasion. Jenkins signed each page of the statement.

At Jenkins' trial, after an exclusionary hearing held out of the presence of the jury, *see Gill v. State*, 265 Md. 350, 289 A. 2d 575 (1972); *Day v. State*, 196 Md. 384, 76 A. 2d 729 (1950); *White v. State*, 13 Md. App. 1, 280 A. 2d 283 (1971), the trial court ruled, without making any specific finding of fact as regards Jenkins' waiver of his right to counsel, that a prima facie case had been made that the statement had been voluntarily given and that it should be submitted to the jury. After taking testimony in the presence of the jury, the statement was presented to the jury for determination of voluntariness.

While Jenkins assigns five reasons why his conviction should be reversed, we need discuss only one of them: whether his confession should have been admitted. We have considered his other contentions and remain unpersuaded.

At argument much was made of Jenkins' testimony that Corporal Cox had said, "You don't need a lawyer." Cox's testimony was that he had no recollection of having made such a statement. Much emphasis was laid, too, on the conflict between Jenkins' testimony that the note to Deputy Sheriff Lewis said that Jenkins wanted Cox to see about a lawyer and a bondsman, and Cox's statement that the message from Lewis was simply that Jenkins wanted to see Cox. This discrepancy, Jenkins argues, could have been resolved by the State's calling Lewis, who was present in the courtroom, as a witness.

Jenkins cites *Gill v. State*, 11 Md. App. 378, 274 A. 2d 667 (1971) in support of his notion that by failing to call Lewis as a witness, the State failed to meet its constitutional burden of proving the voluntariness of the confession. We think this reliance is misplaced. In *Gill*, which reached the Court of Appeals where it was reversed on other procedural grounds, *Gill v. State, supra,* 265 Md. 350, there was a failure to call an officer who had taken part in the interrogation and had allegedly threatened the defendant. Here, Deputy Sheriff Lewis had taken no part in the interrogation. In fact, there was no evidence that he had ever been in contact with Jenkins. The Court of Appeals, in *Gill, supra,* specifically dealt with this situation:

> "[The State's affirmative duty] does not require that each person who had casual contact with the accused, once he was in police custody or being interrogated, must testify to the voluntariness of the confession in order for the prosecution to satisfy its burden." 265 Md. at 353.

Jenkins had ample time to engage counsel between 27 January and 30 January. According to Cox, Jenkins had been given an opportunity to call a lawyer at the time of the hearing on 29 January, before Commissioner McKelvey. Jenkins testified that during this period he had attempted unsuccessfully on at least one occasion to reach his counsel, Mr. Farnell, by telephone.

The difficulty, however, goes deeper than this. Cox's statement that he had no recollection of having told Jenkins that he did not need a lawyer falls short of a categorical denial. A careful examination of Jenkins' testimony leaves us with the impression that the statement attributed to Cox may well have been made not on 27 January, when Cox and Jenkins had a conversation of a cursory nature, but on 30 January, immediately before Cox took Jenkins' statement. The admissibility of the statement hinges on our resolution of this factual issue, in the absence of finding of fact by the trial court.

The State concedes that *Miranda v. Arizona*, 384 U. S. 436 (1966) places it under a heavy burden to show that an accused has voluntarily, knowingly and intelligently waived his right to counsel after having requested an attorney, *State v. Fowler*, 259 Md. 95, 267 A. 2d 228 (1970); *Nasiriddin v. State*, 16 Md. App. 479, 298 A. 2d 490 (1973). While it is true that there is no reason why an accused cannot change his mind, *United States v. Hodge*, 487 F. 2d 945 (5th Cir. 1973); *United States v. Grady*, 423 F. 2d 1091 (5th Cir. 1970), it is equally true that Corporal Cox's statement that Jenkins did not need a lawyer, which Cox did not unequivocally deny, if made on 30 January, might well have induced Jenkins to make a statement under circumstances which would not have been neutralized by a repetition of the Miranda warnings.[1] *See Streams v. State*, 238 Md. 278, 208 A. 2d 614 (1965); *Thiess v. State*, 235 Md. 541, 201 A. 2d 790 (1964); *Boone v. State*, 2 Md. App. 80, 233 A. 2d 476 (1967).

To sum up, if the statement which Cox made, according to Jenkins, had been made on 27 January, immediately after Jenkins' arrest, it might well have been neutralized by the passage of time and by the two Miranda warnings which Cox gave Jenkins immediately before taking the statement on 30 January. On the other hand, if (as well may be the case on the record before us), Cox told Jenkins on 30 January that he did not need a lawyer, this may well have attenuated the voluntariness of Jenkins' confession, *see generally State v. Fowler, supra*, 259 Md. 95.

When an appellate court is called upon to review the admissibility of a confession or other extrajudicial inculpatory statement, it must make an independent review of the record. Chief Judge Orth, for the Court, stated the rule in *Dennis v. Warden*, 6 Md. App. 295, 315, 251 A. 2d 909, 920 (1969):

---

[1]. Another troublesome aspect of the case is that our examination of the record would seem to indicate that Jenkins may have been taken to Annapolis at some time between 28 and 30 January, possibly by Corporal Cox. Neither counsel nor the court pursued the question of the purpose or significance of this trip.

"While the general rule is that the determination of the admissibility of a confession is left largely to the trial court, and will not be disturbed unless there is a manifest abuse of discretion, *Cooper v. State,* 1 Md. App. 190, [228 A. 2d 840 (1967),] it is our duty on review to examine the entire record and make an independent determination of the ultimate issue of voluntariness. *Davis v. North Carolina* [384 U. S. 737, 741-42 (1966)]. As is almost invariably so in cases involving confessions obtained through unobserved police interrogation, there is a conflict here in the testimony as to the events surrounding the interrogations. But we are not a finder of facts; the weight to be given evidence and the credibility of witnesses are matters for the lower court."

Judge Moylan, for the Court, put it a little differently in *Walker v. State,* 12 Md. App. 684, 695, 280 A. 2d 260, 265-66 (1971):

"What we mean, therefore, when we say that we have the obligation to make an independent, reflective constitutional judgment on the facts whenever a claim of a constitutionally-protected right is involved is that, although we give great weight to the findings of the hearing judge as to specific, first-level facts (such as the time that an interrogation began, whether a meal was or was not served, whether a telephone call was requested, etc.) we must make our own independent judgment as to what to make of those facts; we must, in making that independent judgment, resolve for ourselves the ultimate, second-level fact — the existence or non-existence of voluntariness."

The facts before us were not established below to the degree of certainty necessary to enable us to make án independent review of the record. We are therefore unable to sustain or reject the trial court's determination of voluntariness. In accordance with the procedure set forth by

the Court of Appeals in *Gill v. State, supra,* 265 Md. 350, we reverse the judgment entered below and remand the case for a new trial.

> *Judgment of the Circuit Court for Dorchester County reversed and the case remanded for a new trial.*
>
> *Costs to be paid by Dorchester County.*