780 A.2d 1228

**George Wendell SOUTHERN**

**v.**

**STATE of Maryland.**

**No. 2543, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Sept. 12, 2001.

498

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief.)

Before HOLLANDER, ADKINS, and CHARLES E. MOYLAN, Jr., (Ret., specially assigned) JJ.

ADKINS, J.

In the morning hours of February 19, 2000, two 7–11 stores in Prince George's County, one located on Auth Road and the second located on Old Branch Avenue, were the subject of separate robberies. George Wendell Southern, appellant, was convicted by a jury in the Circuit Court for Prince George's County of two counts of robbery, and one count of second degree assault for his participation in these robberies. On appeal, appellant presents four questions for our review:

I. Did the State fail to sustain its burden of proving at the motion to suppress hearing that the appellant's detention was constitutional?

II. Did the court deny appellant's trial counsel a reasonable opportunity to present argument on the motion to suppress?

III. Was it improper for the prosecutor to tell the jury in closing argument that certain counts would not have been included in the indictment unless they were valid?

IV. Did the State fail to prove beyond a reasonable doubt the prerequisites for imposition of the enhanced penalty for violent offenders set forth in Article 27, section 643B(d)?

We hold that the suppression hearing court failed to rule on the propriety of appellant's initial stop and arrest, and remand the case for the limited purpose of addressing this claim. This holding requires us to address a novel question not raised by the parties-whether on remand, the State may introduce evidence regarding the constitutionality of the initial stop that was not introduced at the first suppression hearing. We hold that the State may do so. Because we remand the case for this purpose, we need not address appellant's second contention. We find no merit in appellant's third and fourth contentions.

## FACTS AND LEGAL PROCEEDINGS

At the hearing on appellant's motion to suppress, appellant presented two issues to the hearing court. First, appellant challenged the procedures used to identify him. Second, he challenged "the stop and anything that flowed from it."

### The Identification

Officer Richard Pippin of the Prince George's County Police Department testified that on February 19, 2000, he responded to a call concerning a robbery at a 7–11 store located on Old Branch Avenue. When Pippin arrived at the store, he met with Carolyn Pryor, a customer at the scene who witnessed the robbery. Approximately fifteen minutes later, Pippin drove Pryor and another witness, Gail Alexander, to a nearby location where the police had a suspect, later identified as appellant, in custody. From inside the car, Pryor positively identified appellant as the robber. Alexander stated that she was "fairly certain" that appellant was the robber, but that she was not certain. Alexander further remarked that appellant was not wearing the same clothing as the robber.

Corporal Charles Burgess testified that he, along with a K 9 officer, arrested appellant and turned him over to Officer Monty Burkhalter. Burkhalter testified that appellant was in his custody during the "show up" procedure. He said that appellant was handcuffed at the time, and that four police officers and a police dog were "in the area" when the identification was made.

Pryor testified concerning the robbery and her identification of appellant. She explained that she was in the store on February 19 at approximately 7:30 a.m. when a robbery occurred. She remembered that she saw the robber for "about ten seconds or more." From about twenty feet away she observed the robber

> come in the door, he had like a dark red, either a t-shirt or bandanna-type thing covering his nose down. As I walked back, I continued to observe. He jumped the counter by the cash register and was kicking it and making a loud roar,

and the bandanna or t-shirt kept falling down, and he kept pulling it up.

Approximately thirty minutes after the robbery, the police informed Pryor that they "had a suspect." Pryor was driven to a location a short distance away and identified appellant as the robber.

The court upheld the identification. In so doing, it ruled: The court believes that there was no likelihood of a misidentification created by the manner in which the witness [Pryor] was taken to the suspect. There was nothing by way of any suggestion that the suspect was indeed the person that had indeed committed the robbery. She was asked whether or not she could make an identification. She was able to make an identification.

Her opportunity to see the perpetrator in the business establishment is clear, and she had a long period within which to view the person who committed this crime. Ten seconds....

And there wasn't that much time that elapsed between the time the witness saw the defendant committing the crime in the 7–Eleven and the time she saw him again on the street.... So I believe there is no impermissible suggestion with regard to the identification by the manner in which the show-up was conducted, and the motion to suppress is denied.

### The Stop

Appellant sought to "suppress the stop and anything that flowed from that." Specifically, he sought to suppress two statements he made to the police after he was in custody and items seized from a car used during the robbery.

After appellant was identified as the robber, Burkhalter took him to Southern Maryland Hospital to treat him for dog bite injuries that he sustained from the K–9 unit during his arrest. Sergeant Robert Arscott went to the hospital to check the wounds. Arscott testified that while in the hospital, he was speaking to another officer concerning a vehicle found in

front of the 7–11 when appellant stated, "[t]hat was my girlfriend's car and she gave me permission to use it." Arscott explained that appellant was not asked about the car, but rather, volunteered the information.

After appellant was released from the hospital, Burkhalter took him to the Criminal Investigation Division and turned him over to Officer Michael Cheeks. Cheeks testified that he had visited the 7–11 store during the course of his investigation. When Cheeks returned to headquarters, Burkhalter turned appellant over to him at approximately 10:37 a.m. At approximately 1:45 p.m., Cheeks interviewed appellant. Cheeks asserted that after he advised appellant of his rights and appellant executed a waiver of rights form, the latter proceeded to give a written statement concerning the robbery.

Cheeks also described the search of a vehicle recovered from the 7–11. The vehicle was apparently registered to George Howsare, who gave the police permission to conduct the search. During the search, the police recovered a cash box from the 7–11, a red shirt, and a black baseball cap.

After the evidence was received, appellant's counsel argued that appellant's statement to Cheeks, his remark at the hospital heard by Arscott, and the contents of the car should be suppressed.

[W]ith regard to the stop, the defendant should really be the starting point for everything. We really have no evidence. What we have is Officer Burkhalter, who did not participate in the stop of [appellant], who indicated the description that was given was a white male, and he really didn't have anything further than that. I believe it was five-eight to five-ten.

Other than that, the next thing we know is we have [appellant] stopped and witnesses driving by. So I don't think the State has established probable cause-I would therefore like you to suppress the identification based on that.

With regard to the statement [heard by] ... Officer Arscott, obviously [appellant] was in custody. I believe that

the conversation that—or Sergeant Arscott did not recall who he was having the conversation with.... The only way that [the police would learn that]—his girlfriend would let him use the car ... would be in response to some sort of interrogation or something that would raise it to the level of interrogation.

[With regard to the statement to Officer Cheeks], [appellant] indicated he smoked crack earlier in the morning. We know the incident occurred around 7:00 a.m. and the statement was not taken until 1 something in the afternoon and not completed until 5 something in the afternoon.... We know that [appellant] was obviously uncomfortable ... because he was just bitten in two separate places by the dog. And for that reason we said [appellant's statement] was not voluntar[y]....

With regard to the search of the vehicle, I don't believe the State satisfied under the rules who the owner is, or who searched it, or where it came from. And for that reason we would ask that ... the I.D. be suppressed because the stop was—.

The hearing court rejected appellant's arguments and denied the motion to suppress. In so doing, the court found that [appellant] was in fact identified by a witness as the person who perpetrated the robbery and was arrested as a result of that.... That a vehicle was recovered in close proximity to the second location of the robbery. That the vehicle belonged to someone other than [appellant], and that someone gave permission to the police to search it by written consent.

That [appellant] was not detained unduly. That he was advised of his constitutional rights.... That he waived his constitutional rights.... That he answered questions and fully cooperated with the police, and this was not after an undue delay.... And the statement was fully voluntary.

At the subsequent trial, appellant's statements and the evidence seized from the car were received as evidence. The jury found appellant guilty on two counts of robbery and one

count of assault. Appellant received two consecutive ten-year sentences for his robbery convictions, ten years to be served without parole. The remaining assault count was merged. This appeal followed.

Additional facts will be added as necessary to the following discussion.

## DISCUSSION

### I.

### The Motion To Suppress

We first address appellant's challenge to the propriety of the initial stop. Because we conclude that the trial court erred in failing to rule on this issue, and remand for the purposes of such a ruling, we then address two issues relating to the remand.

### A.

### Propriety Of The Initial Stop

Appellant's first contention is that the trial court erred in denying his motion to suppress. Specifically, he argues that the State failed to prove that the initial stop was constitutional because "[n]o testimony was adduced by the State ... regarding the circumstances under which he originally came into police custody .... [and] there was no basis from which the court would have concluded that the initial stop and subsequent arrest of the appellant was legal."

In its brief, the State admits that "virtually no evidence was presented at the suppression hearing regarding the circumstances of [appellant's] initial stop." The State argues, however, that appellant failed to properly challenge the propriety of the initial stop in his motion to suppress. According to the State,

> although there was a passing reference to the stop at the conclusion of the identification portion of the hearing and a somewhat lengthier discussion of the stop after all the

evidence had been presented, when [appellant's] counsel's comments are considered in context, it is plain that counsel never fairly alerted either the State or the court that [appellant] was challenging the detention itself, rather than the identification, statements and seizure that followed.

 The State bears the ultimate burden of proving that evidence seized without a warrant should not be suppressed. *See State v. Bell,* 334 Md. 178, 191, 638 A.2d 107 (1994). Nevertheless, it is "always the burden of the defense to raise the issue of unlawful search and seizure...." *Kohr v. State,* 40 Md.App. 92, 97, 388 A.2d 1242, *cert. denied,* 283 Md. 735 (1978). The failure to raise a suppression issue before the hearing court amounts to a waiver to seek relief upon appellate review. *See Nye v. State,* 49 Md.App. 111, 116–17, 430 A.2d 867 (1981). Moreover, the motion to suppress must be presented with particularity in order to preserve an objection. *See, e.g., Jackson v. State,* 52 Md.App. 327, 332, 449 A.2d 438, *cert. denied,* 294 Md. 652 (1982) ("If a hearing is granted but the defendant presents no grounds to support the motion, his failure 'amounts' to waiver").

 Indeed, "[a] party must bring his argument to the attention of the trial court with enough particularity that the court is aware first, that there is an issue before it, and secondly, what the parameters of the issue are. The trial court needs sufficient information to allow it to make a thoughtful judgment." *Harmony v. State,* 88 Md.App. 306, 317, 594 A.2d 1182 (1991). Based on our review of the record, we believe appellant met these standards and adequately articulated his challenge to the initial stop.

 In framing his second motion to suppress, appellant stated that he wished to "suppress the stop and anything that flowed from that." After making this statement, appellant went on to argue particular reasons why his two statements to Cheeks and the items seized from the vehicle should be suppressed. At that point, the State presented evidence concerning appellant's two statements and the search of the automobile. The State did not adduce any testimony concern-

ing the initial stop of appellant, or the State's probable cause to hold appellant for the show-up procedure.[1]

Appellant again argued regarding the initial stop after the State introduced all its evidence. At this point, appellant's counsel challenged the lack of evidence relating to the initial stop

> with regard to the stop, the defendant should really be the starting point for everything. We really have no evidence. What we have is Officer Burkhalter, who did not participate in the stop of [appellant], who indicated the description that was given was a white male, and he really didn't have anything further than that.

In presenting his argument to the hearing court, appellant's counsel clearly and unambiguously stated that appellant was challenging "the stop and everything that flowed from it." Moreover, he raised the issue again in arguing his motion to the hearing court.

The State nevertheless insists that appellant may not challenge the propriety of the initial stop, because "[t]here was no evidence from which the court could have made any ruling on the propriety of the stop itself," and that "when given an opportunity to clarify the basis of her argument, defense counsel did nothing to indicate that [appellant] was challenging the propriety of the initial detention per se. . . ." We disagree. Defense counsel's statement that she sought to "suppress the stop" should have put up a red flag for the State, and should have alerted the State that it was necessary to provide evidence concerning the initial stop. Appellant is

---

1. Officer Burgess could have testified concerning the initial apprehension of appellant. During trial, Burgess testified that he, a K–9 unit officer, and a police dog tracked appellant after the police dog caught appellant's scent from the 7–11 store. The officers found appellant hiding in some branches under a large evergreen tree. Of course, this evidence from the trial may not be used in evaluating the court's decision in the pre-trial motion to suppress. *See, e.g., Jackson v. State,* 52 Md.App. 327, 332 n. 5, 449 A.2d 438 ("[i]n determining whether the denial of a motion to suppress . . . is correct, the appellate court looks to the record of the suppression hearing, and does not consider the record of the trial itself").

not required to present evidence concerning the propriety of the initial stop. Once a defendant properly challenges the propriety of the stop, the burden is on the State to present evidence justifying its actions. *See, e.g., DiPasquale v. State,* 43 Md.App. 574, 578, 406 A.2d 665 (1979) ("Warrantless Fourth Amendment intrusions are presumptively unreasonable ... and the burden is allocated to the State of showing adequate justification for the exceptional departure from the Fourth Amendment norm"). We hold that appellant did not waive his Fourth Amendment challenge by failing to present evidence concerning the initial stop. The hearing court never ruled upon the propriety of the initial stop. Instead, the court's ruling focused on events that occurred during and after the show-up procedure.

Therefore, we remand this case so that the court may rule on the propriety of the initial stop.

### B.

### Remaining Issues On Remand

Two issues remain concerning the remand. First, we must determine the scope of the remand. The State contends that the jury verdict should stand and that the case should be remanded for the limited purpose of conducting a new suppression hearing concerning the initial stop. Appellant counters that his conviction must be reversed. Second, although not addressed by the parties, we must determine, for the guidance of the trial court, the novel question of whether the State, on remand, is allowed to offer additional evidence at the suppression hearing beyond that presented at the initial suppression hearing.

### 1.

### Scope. Of The Remand

Maryland Rule 8–604(d)(1) authorizes a limited remand. It provides:

If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

The Court of Appeals and this Court have explained when a remand for a limited purpose, rather than for a new trial, may be authorized. In *Gill v. State*, 265 Md. 350, 289 A.2d 575 (1972), Gill was convicted of robbery with a deadly weapon and kidnaping. His conviction was primarily based on a confession he gave to two police detectives. This Court reversed Gill's conviction because one of the detectives did not testify and specifically rebut Gill's accusation that the detective coerced Gill into making the incriminating statement. We did not, however, grant Gill a new trial. Rather, we remanded the case "for a redetermination of the question of voluntariness." *Gill v. State*, 11 Md.App. 378, 384, 274 A.2d 667 (1971), *rev'd*, 265 Md. 350, 289 A.2d 575 (1972).

The Court of Appeals, while agreeing that the State failed to meet its burden of showing the confession was voluntary, disagreed with our determination that a limited remand was adequate, and remanded the case for a new trial. The Court explained that the issue of the voluntary nature of a confession "involves a mixed question of law and fact" which is first heard by the judge, but "is then submitted to the jury for its ultimate consideration." *Gill*, 265 Md. at 357–58, 289 A.2d 575. Because the jury ultimately decides the issue of voluntariness, a limited remand was not appropriate. The Court reasoned that

it becomes quite apparent that a remand solely for a redetermination of the confession's voluntariness can never be permitted in a jury trial since even if the trial judge

again concludes the statement was voluntary, that only establishes, prima facie, it was uncoerced. The jury still must have the opportunity to consider the evidence pertaining to its voluntariness before deciding whether the accused is guilty or innocent. This inviolable jury function would be eliminated unless the judgment was reversed and a new trial awarded.

*Id.* at 358–59, 289 A.2d 575.

The Court clarified and distinguished its *Gill* decision in *Wiener v. State,* 290 Md. 425, 430 A.2d 588 (1981). In *Wiener,* the defendant was convicted of numerous crimes while being represented by the Public Defender's Office. Unbeknownst to the defendant or the Public Defender, the Attorney General's office had placed an informant in the Public Defender's Office to investigate an unrelated matter. During his undercover work, the informant was shown a statement made by defendant and discussed with an investigator "things which would probably be done in defense of the case and procedures which would probably be followed." *Id.* at 430, 430 A.2d 588.

Upon appeal after the defendant's conviction, the Court held that the case must be remanded to determine whether the informant's actions violated the defendant's right to counsel. Nevertheless, the Court refused to grant the defendant a new trial and held that a limited remand was appropriate to decide this issue. In so doing, the Court distinguished *Gill* and held that a limited remand was appropriate because the issue concerning appellant's right to counsel was ancillary to the trial. It explained:

Here, the hearing to determine the facts underlying [the defendant's] motion claiming denial of right to the effective assistance of counsel was collateral to the criminal trial itself. Unlike the issue relating to the voluntariness of the confession in *Gill,* evidence given in support of, or in opposition to, [the defendant's] motion to dismiss is not presented again in the course of the trial for consideration with all of the evidence bearing on guilt or innocence. [The defendant's] non-jury case presents the type of an issue

which meets the criteria suggested in *Gill* for a limited remand in a criminal case. . . .

*Id.* at 438, 430 A.2d 588.

This Court addressed the application of Rule 8–604(d)(1) in *Bates v. State,* 64 Md.App. 279, 494 A.2d 976 (1985). In *Bates,* the defendant was arrested while riding as a passenger in a taxicab, and convicted for possession of heroin with intent to distribute. On appeal, he argued that the trial court erred in denying his pretrial motion to suppress because he lacked standing to object to the search of the taxicab. We held that the defendant did have standing to assert his Fourth Amendment challenge and ordered a limited remand for the sole purpose of determining whether the defendant was the subject of an illegal search and seizure. In ordering a new suppression hearing, we determined that a limited remand was appropriate because "[i]f at that hearing it should be determined that the search was reasonable under the Fourth Amendment and that the physical evidence was properly before the jury, it will mean that no constitutional right of the defendant was violated when the physical evidence was admitted." *Id.* at 292, 494 A.2d 976. We further explained that if, after considering the defendant's motion to suppress, "it should be determined that the search was unconstitutional and that the physical evidence should never had been admitted, the trial judge will . . . award the [defendant] a new trial." *Id.*

In the instant case, a limited remand for determining whether the police had probable cause to make the initial stop and arrest of appellant is the appropriate remedy. Unlike *Gill,* where the issue initially to be decided by the suppression court—the voluntariness of a confession—required further evaluation by the jury, appellant's probable cause challenge is an issue to be decided solely by the trial court. The instant case is analogous to *Bates,* because in both, the outcome of the trial would not be affected if the suppression motion is denied. *See Bates,* 64 Md.App. at 288, 494 A.2d 976 ("The Fourth Amendment merits litigated at a suppression hearing are a matter for the trial judge alone, dealing only with the admissi-

bility of the evidence, and not a concern of the jury in the remotest way"). Accordingly, because the suppression issue is ancillary to the trial on the merits, we shall remand this case pursuant to Rule 8–604(d)(1), for the purpose of determining whether the initial stop and arrest of appellant was authorized by the Fourth Amendment. If, however, the court rules that the original stop violated the Fourth Amendment, appellant would be entitled to a new trial and the admission of evidence at the new trial would be subject to the court's ruling granting the suppression motion.

With regard to the other issues already addressed by the trial court in the original motion to suppress, we see no reason why the trial court's rulings concerning these issues should not stand if the trial court denies appellant's suppression motion concerning the initial stop. If the court, however, determines that the initial stop was not justified, it must revisit its previous suppression rulings in light of that determination.

### 2.

### Introduction Of New Evidence

The State admits in its brief that "virtually no evidence was presented at the suppression hearing regarding the circumstances of [appellant's] initial stop." Undoubtably, the State will want to introduce evidence on remand concerning the initial stop and apprehension of appellant. The question remains whether the State is entitled to introduce new evidence.

This question was addressed by the Court of Appeals in *Tu v. State*, 336 Md. 406, 648 A.2d 993 (1994). Tu was convicted of first degree murder. Prior to that trial, Tu sought to suppress certain evidence seized in Las Vegas, Nevada. The trial court found that certain items seized were beyond the scope of a search warrant. Nevertheless, the court denied Tu's motion under the plain view exception to the warrant requirement. This Court reversed Tu's conviction, finding that the State failed to adequately prove that the plain view

exception applied. We explained that "after the application, search warrant, and return were admitted in evidence at the suppression hearing, the State rested. There was no testimony by Detective Turner ... as to where or under what circumstances the items in [Tu's] motel were seized." *Id.* at 413, 648 A.2d 993. On remand, Turner testified concerning the seizure of the contested items. He stated that he had been "mistaken" when he testified at trial that the items were seized at the time the search warrant was executed, and that the contested items were "in the custody of the Nevada authorities prior to the search at [Tu's] motel room." *Id.* at 414, 648 A.2d 993. The suppression court accepted Turner's testimony and admitted the contested evidence at trial. Tu was subsequently convicted of second degree murder. After this Court affirmed the conviction, in *Tu v. State,* 97 Md.App. 486, 631 A.2d 110 (1993), the Court of Appeals granted *certiorari.*

Before the Court of Appeals, Tu argued that under the "law of the case" doctrine that the court could not receive additional facts during the second suppression hearing. The Court characterized Tu's argument as follows:

> Tu's argument in [Tu's first appeal] implicitly prohibits or limits the trial court from receiving additional or contradictory evidence and from considering a different legal theory—one under which suppression would be denied. In the broadest application of his argument, Tu would have us foreclose, under the law of the case doctrine, *any* reconsideration by a trial court of the suppression of those items of evidence involved in the appellate ruling granting suppression.

*Id.* at 417–18, 631 A.2d 110 (emphasis in original).

The Court rejected Tu's argument and held that the court could receive additional, even contradictory facts, at a second suppression hearing.

> [R]eversal for the erroneous denial of a motion to suppress does not, in and of itself, preclude any trial court reconsideration of the admissibility of the State's evidence that was

the subject of the suppression motion, at least if the reconsideration presents a legal theory that was not ruled upon on the prior appeal. Further, facts that are relevant to applying that previously unadjudicated legal theory and that were not previously presented may be considered by the trial court, even if those facts were known to the State at the time of the original trial court ruling.

*Id.* at 420, 631 A.2d 110. Applying this rule, the Court held that the State satisfied its burden in the second suppression hearing.

At the second suppression hearing in the instant matter the State proved to the satisfaction of the trial court that the custodial items were not seized at the El Rancho Hotel and that the custodial items were not subject to suppression under the actual facts and under a legal theory other than that involved in the decision in *Tu I.* . . . There is no conflict with the law of the case because the holding in *Tu I* adjudicated only those aspects of the suppression/ admissibility of the custodial items that were presented in that appeal. We hold that the custodial items were not barred by the law of the case doctrine.

*Id.* at 427–28, 631 A.2d 110.

*Tu* is applicable to the present controversy. Like *Tu,* the additional facts would be admitted to support a legal theory that was not addressed by the trial court-the propriety of the initial stop. The *Tu* Court emphasized that the decision in the previous appeal was not that the evidence was inadmissible; rather, the Court held that the evidence presented in the first suppression hearing did not support the State's plain view theory. Likewise, as discussed *supra,* we have not ruled that the initial stop was unjustified. Instead, we have held that remand is necessary because the trial court never addressed the issue. Indeed, the State never presented any legal theory concerning the initial stop. Based on the circumstances of this case, we hold that the trial court on remand may hear additional evidence concerning the propriety of the initial stop.

## II.

### Appellant's Opportunity To Argue

Appellant also contends that he was denied the opportunity to present argument on his motion to suppress. After receiving evidence, the court heard appellant's counsel's argument. Near the end of counsel's argument, the following occurred:

[APPELLANT'S COUNSEL]: With regard to the search of the vehicle, I don't believe the State satisfied under the rules who the owner is, or who searched it, or where it came from. And for the reason we would ask-but most importantly, we would ask that the I.D. be suppressed because the stop was—

THE COURT: The Court finds that the defendant was in fact identified by a witness . . . . (emphasis added)

Appellant contends that the dash at the end of counsel's statement indicates that "trial counsel intended to present further argument on the motion to suppress" and that the trial court interrupted counsel with its ruling. As we have determined that appellant is entitled to a new suppression hearing, we need not address this issue.

## III.

### Prosecutor's Remarks During Closing Argument

Appellant next contends that his conviction must be reversed because the prosecutor made an improper remark during closing arguments. During the trial, one of the victims of the alleged assault, Rita Staton, did not testify. Because Staton did not testify, the trial court gave the jury a missing witness instruction.[2] During closing, the prosecutor offered an

---

**2.** The court gave the following missing witness instruction to the jury:

You have heard testimony about Rita Staton, who was not called as a witness in this case. If a witness could have given important testimony on an important issue in this case, and if the witness was particularly within the power of the State to produce but was not called by the State, and the absence of this witness is not sufficiently set forth or explained, then you may decide that the testimony of that witness would have been unfavorable to the State.

explanation why Staton did not testify, suggesting that "testifying in this case would have traumatized her." The following occurred:

> [PROSECUTOR]: Well, ladies and gentlemen, understand that this was a young lady who was very upset about what happened. And she was very shaken up that day. And perhaps, ladies and gentlemen, coming to court and testifying in this case would have traumatized her.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Yes. Just comment on the evidence, not on things that are not evidence.
>
> [PROSECUTOR]: The point is ... the fact that Miss Staton is not here today does not mean that you should find the defendant not guilty of robbing the 7–Eleven.... Because there was evidence in this case, and the facts, ladies and gentlemen, that you have to consider show there is evidence that you can find him guilty, otherwise you would not have those two counts—
>
> [DEFENSE COUNSEL]: Objection
>
> [PROSECUTOR]:—involving Miss Staton
>
> THE COURT: Overruled.

Appellant contends that the prosecutor's statement that "otherwise you would not have those two counts ... involving Miss Staton" "exceeded the bounds of proper closing argument." He argues that "the prosecutor improperly suggested to the jury that the survival of the counts relating to Ms. Staton in the charging document at the conclusion of the trial indicated that they were strongly supported by the evidence."

Attorneys are afforded great leeway in presenting closing arguments. *See Degren v. State,* 352 Md. 400, 429, 722 A.2d 887 (1999). During closing arguments, counsel may "state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence[.]" *Wilhelm v. State,* 272 Md. 404, 412, 326 A.2d 707 (1974). Nevertheless, prosecutors are not without limits in presenting closing arguments. *See Degren,* 352 Md. at 430,

722 A.2d 887. "Whether any impropriety occurred in the closing argument rests largely within the control and discretion of the presiding judge[,]" *Grandison v. State,* 341 Md. 175, 225, 670 A.2d 398 (1995), *cert. denied,* 519 U.S. 1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996), and "not every improper comment requires reversal." *Williams v. State,* 137 Md.App. 444, 456, 768 A.2d 761 (2001). Reversal is only warranted if "it appears that the remarks of the prosecutor actually misled the jury or are likely to have misled or influenced the jury to the prejudice of the accused." *Jones v. State,* 310 Md. 569, 580, 530 A.2d 743 (1987), *vacated and remanded on other grounds,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988). Moreover, the alleged prejudicial remarks must be examined in the context of the facts of the particular case. *See Wilson v. State,* 136 Md.App. 27, 76, 764 A.2d 284, *cert. granted,* 363 Md. 662, 770 A.2d 169 (2000). "An appellate court should not disturb the trial court's judgment absent a clear abuse of discretion by the trial court of a character likely to have injured the complaining party." *Grandison,* 341 Md. at 225, 670 A.2d 398.

■ Appellant complains that the prosecutor's comment that charges had been brought suggested that the charges were supported by the evidence and "the mere existence of formal charges alleging those crimes was not probative on the issue of appellant's guilt and should not have been given any consideration by the jurors in arriving at their verdict." We hold that the trial court did not abuse its discretion in overruling appellant's objection to the remark.

The prosecutor's remark was likely made in response to the missing witness instruction and in anticipation of the defense's argument that Staton's failure to testify was fatal to the State's case. The prosecutor made the contested statement when reviewing the evidence that supported appellant's conviction. It was reasonable to interpret the statement as an effort to communicate to the jury that the judge, in allowing two counts to be considered by the jury, had ruled that there was the minimum amount of evidence necessary to *allow* the

jury to convict. Thus, the statement differs markedly from a statement that would be improper - that charges alone justify the conviction. Given this permissible interpretation, the trial court did not abuse its discretion in overruling appellant's objection.

We further observe that the prosecutor's comment could not have misled or prejudicially influenced the jury. The court properly instructed the jury concerning the purpose of the charging documents. The court instructed the jury that the "indictment in this case is not evidence. It's merely the formal method of accusing the defendant of a crime and it creates no inference of guilt."

## IV.

### Enhanced Sentence

Appellant's final contention is that the State failed to prove, beyond a reasonable doubt, the prerequisites for imposition of the mandatory ten year sentence under Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.) Art. 27, section 643B(d).

Art. 27, section 643B requires imposition of enhanced penalties for violent offenders. In pertinent part, it provides:

(d) *Second conviction of crime of violence.* - Except as provided in subsection (g) of this section, any person who has been convicted on a prior occasion of a crime of violence, including a conviction for an offense committed before October 1, 1994, and has served a term of confinement in a correctional institution for that conviction shall be sentenced, on being convicted a second time of a crime of violence committed on or after October 1, 1994, to imprisonment for the term allowed by law, but, in any event, not less than 10 years. The court may not suspend all or part of the mandatory 10–year sentence required under this subsection.

For a defendant to receive an enhanced sentence, the State must provide notice of an intent to seek an enhanced sentence, and "the burden is on the State to prove, by competent evidence and beyond a reasonable doubt, the exis-

tence of all of the statutory conditions precedent for the imposition of enhanced punishment." *Jones v. State,* 324 Md. 32, 37, 595 A.2d 463 (1991).

■■■■ The State filed the requisite notice that it would seek an enhanced penalty as required by section 643B and Maryland Rule 4-245(c). During sentencing, the court reviewed a presentence investigation report which indicated that appellant had committed a crime and served a period of confinement necessary to invoke section 643B. Appellant's counsel stated during sentencing that he had gone over the report with appellant "and there's no additions or corrections."

Appellant contends that the trial court could not rely on the presentence investigation report as sufficient evidence to invoke section 643B(d). He argues that "[t]he State never offered, and the court never received into evidence, the record of the prior conviction on which it was relying to establish the predicate offense; and no records from the Division of Correction were offered to prove that the [a]ppellant had served a term of confinement in a correctional institution as required under the statute."

We hold that the court was entitled to rely on the presentence investigation report to invoke section 643B(d). This precise issue was addressed in *Sutton v. State,* 128 Md.App. 308, 738 A.2d 286 (1999). In *Sutton,* the State relied on a presentence report to sustain its burden to prove that Sutton was eligible for enhanced punishment under Article 27, section 286(c)(1).[3] We held that the presentence report was sufficient to establish the State's burden. "[A] presentence investigation report given to the defendant's attorney at the hearing is 'competent evidence' sufficient to prove 'the factual predicate in order to impose enhanced punishment,' provided counsel does not object to the accuracy of the record." *Id.* at 328–29, 738 A.2d 286.

---

3. Section 286(c)(1) provides mandatory sentencing for a defendant who had previously been convicted of various drug offenses.

In the instant case, appellant did not object to the contents of the presentence investigation report; in fact, he admitted that the report was accurate. On appeal, he does not contest the report's validity; rather, he contends it is not sufficient in and of itself to sustain the State's burden. We disagree, and hold that *Sutton* is controlling. Therefore, we shall affirm appellant's sentence under section 643B(d).

**CASE REMANDED WITHOUT AFFIRMANCE OR REVERSAL TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR THE PURPOSE OF CONDUCTING A SUPPRESSION HEARING CONSISTENT WITH THIS OPINION.**

**THE JUDGMENT OF CONVICTION REMAINS IN EFFECT PENDING FURTHER PROCEEDINGS. COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.**